INDEPENDENT PETROCHEMICAL
CORPORATION, et al., Plaintiffs,

v.

AETNA CASUALTY AND SURETY
COMPANY, et al., Defendants.

Civ. A. No. 83–3347.

United States District Court,
District of Columbia.

Aug. 8, 1986.

Jerold Oshinsky, Anderson, Baker, Kill & Olick, Washington, D.C., for Independent Petrochemical Corp., Charter Oil Co. and Charter Co.

Stephen L. Nightingale, Washington, D.C., for Aetna Cas. and Sur. Co.

Lawrence E. Carr, Jr., Washington, D.C., for Continental Ins. Co.

John P. Arness, Washington, D.C., for Hartford Acc. & Indem. Co.

Dennis Flannery and Wm. J. Perlstein, Washington, D.C., for Ins. Co. of North America.

Barry R. Ostrager, New York City, for Travelers Indem. Co.

Richard H. Gimer, Santarelli & Bond, Washington, D.C., for American Employers' Ins. Co. and Commercial Union Ins. Co.

Peter Schlesinger, Michael Nussbaum and Earl C. Dudley, Jr., Washington, D.C., for Certain Underwriters at Lloyd's, London and London Market Ins. Companies.

James C. Gregg, James W. Greene, Washington, D.C., for Continental Cas. Co., North Star Reinsurance Corp., American Re-insurance Co. and Unigard Mut. Ins. Co.

John P. Arness, Washington, D.C., for First State Ins. Co.

Robert E. Heggestad, Casey, Scott & Canfield, P.C., Washington, D.C., for Harbor Ins. Co.

James P. Schaller and M. Elizabeth Medaglia, Jackson & Campbell, Washington, D.C., for American Home Assur. Co., Ins. Co. of State of Pa., and Lexington Ins. Co.

Jas. T. Wharton, Jas. C. Gregg and Jas. C. Greene, Annapolis, Md., for Midland Ins. Co.

Robert F. McDermott, Jr., Lawrence P. Postol, Jones, Day, Reavis & Pogue, Washington, D.C., for Corporate Ins. & Reinsurance Co. Ltd.

Andrew H. Marks, Crowell & Moring, Washington, D.C., Alan Miller, Bethesda, Md., for U.S. Fire Ins. Co.

Paul L. Friedman, Carolyn B. Lamn, Michael D. Sullivan, White & Case, Lloyd H. Randolph, Craig, Alan Wilson, Washington, D.C., for Pacific Indem. Co.

## MEMORANDUM

FLANNERY, District Judge.

This matter once again comes before the court on various motions. Plaintiffs have moved for reconsideration and clarification of the court's May 2, 1986 Memorandum and Order and Declaration, 654 F.Supp. 1334, 1349, regarding both the trigger of coverage issue and the denial of privilege for certain documents. Defendant Mission Insurance Company ("Mission") has moved to stay all proceedings against it pending the outcome of rehabilitation proceedings involving defendant Mission in California. Defendant Midland Insurance Company ("Midland") has moved to dismiss these proceedings against it or to stay them pending the outcome of liquidation proceedings involving defendant Midland in New York.

The background of these proceedings is adequately related in the court's prior Memorandums of February 4 and May 2, 1986 and will not be repeated here. Each motion is dealt with separately.

I. *Reconsideration of the Trigger of Coverage Issue*

Plaintiffs ask this court to reconsider various aspects of its trigger of coverage ruling, issued May 2, 1986. While plaintiffs do not contest this court's finding that Missouri law controls the trigger of coverage issue, nor that Missouri would apply an injury-in-fact trigger, plaintiffs do seek reconsideration and clarification of three aspects of the ruling: (1) whether the injury

in fact must be "diagnosable and compensable" in order to trigger coverage; (2) whether injury in fact may happen at different times for a particular claimant, thereby triggering different policies; and (3) whether technical corrections to the opinion are appropriate. Various defendants filed oppositions to plaintiffs' motion.

### A. *Injury in Fact as "Diagnosable and Compensable"*

■ This court's May 2, 1986 Order and Declaration declared that:

> if a finder of fact determines that at some time the effects of exposure to dioxin negligently released by plaintiffs actually resulted in diagnosable and compensable injury in fact to one of the underlying dioxin-related claimants, and if a defendant insurance carrier had a policy in effect at that time, then that defendant's duty to indemnify plaintiffs for the underlying claim is triggered.

Plaintiffs ask that the court delete reference to "diagnosable and compensable" injury in fact since no such limitation exists in either New York or Missouri law. Upon reconsideration, this court agrees with plaintiffs.

The "diagnosable and compensable" language was formulated by Judge Sofaer of the Southern District of New York in *American Home Prods. Corp. v. Liberty Mut. Ins. Co.*, 565 F.Supp. 1485, 1489 (S.D. N.Y.1983). That opinion was affirmed by the Second Circuit, but was modified to delete the "diagnosable and compensable" limitation because there was no basis for it in the policy language. *American Home Prods. Corp. v. Liberty Mut. Ins. Co.*, 748 F.2d 760, 765–66 (2d Cir.1984); *see also Abex Corp. v. Maryland Cas. Co.*, 740 F.2d 119 (D.C.Cir.1986) (recognizing New York law as not imposing a "diagnosable and compensable" limitation). The Missouri case relied on predominantly by this court in interpreting Missouri law regarding the trigger of coverage did use the "diagnosable and compensable" language. *Standard Asbestos Mfg. & Insulating Co. v. Royal Indemnity Ins. Co.*, No. CV80–14909, slip op. at 17 (Cir.Ct. Jackson City,

Mo., Apr. 3, 1986). Yet in explaining what kind of injury triggers insurance coverage, that court said that when injury is discovered, "we retrospectively determine" at what point injury was present but not yet realized. *Id.* at 17–18. This approach suggests adherence to the New York interpretation of injury, which does not limit the occurrence of an injury to one that is diagnosable and compensable during the time of the policy period, but which includes injury that may not have been either diagnosable or compensable during the time a particular policy was in place. A real but undiscovered injury, proved in retrospect to have existed at the relevant time, would establish coverage, irrespective of the time the injury became diagnosable or compensable.

### B. *Injury in Fact as Occurring at Different Times*

■ Plaintiffs seek further clarification that an injury in fact to a claimant may happen at different times, thus triggering more than one policy. In any particular case, it is possible that a trier could find that exposure to dioxin caused injury in fact in year one, and then that *further exposure* aggravated an existing injury or caused additional injuries in years two or three. What a trier could not find under this court's interpretation of Missouri law, is that due to an exposure in year one, a single injury in fact occurred in year one during exposure, occurred in year five during manifestation, and also occurred in every year in between. A trier must determine at what point a single injury in fact occurred in such circumstances. The insurance policy in place at that time is triggered for that injury. The injury is a distinct event rather than a continuous process extending over a prolonged period of time. This does not preclude the possibility of a single claimant suffering more than one injury depending on the facts of his or her case.

This concept is not a complex one and this court does not believe that it will be difficult for courts adjudicating individual claims to apply it fairly.

**4**

## C. *Technical Corrections*

■ Plaintiffs ask this court to make two technical corrections to its May 2, 1986 ruling. One concerns the amount of insurance coverage at issue and another concerns the status of Charter's reorganization in Florida. This court finds that neither item bears a significant relationship to the issues decided before this court and therefore sees no need for correction. No precedential weight should be given to either reference.

## II. *Reconsideration of the Plaintiffs' Assertion of Privilege*

■ Plaintiffs move this court for reconsideration of the May 2, 1986 decision rejecting plaintiffs' assertion of privilege with respect to two documents sought by Hartford Accident and Indemnity Company: (1) a transcript of a telephone conversation between Gregory F. Browne (District Manager of IPC in St. Louis, Missouri) and Kirk Baker (in-house counsel to IPC who operated out of Charter International Oil Company in Houston, a subsidiary of IPC's parent corporation, Charter Oil Company); and (2) a memorandum prepared by Browne for Baker, as directed by Baker during the telephone conversation. Plaintiffs submit the actual documents for *in camera* review.

*Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), *Diversified Indus. Inc. v. Meredith,* 572 F.2d 596 (8th Cir.1977), *en banc hearing,* 572 F.2d 606 (8th Cir.1978), and *United States v. American Telephone & Telegraph Co.,* 86 F.R.D. 603 (D.D.C.1979) control this issue. If the communication is made by a person not within the "control group" of the corporation, then it is only privileged if: (1) the communication was made for the purpose of securing legal advice; (2) the employee making the communication did so at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties; (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents. *Diversified,* 572 F.2d 596, 609.

The May 2, 1986 decision found that Browne was not within the "control group" of the corporation: he played no role in how the corporation legally handled the dioxin incidents and cannot be said to personify the corporation. Further, the court found that plaintiffs had not established a non-control group privilege because there was no showing that Browne was directed by corporate supervisors to communicate to Baker so that Baker could provide legal advice to the corporation. Nor did plaintiffs show that Browne was seeking legal advice or that he regarded the material to be of a confidential, legal nature. Given that the burden is on plaintiffs to prove conclusively each element of the privilege, *S.E.C. v. Gulf & Western Indus. Inc.,* 518 F.Supp. 675, 682 (D.D.C.1981), the court rejected plaintiffs' claim and ordered release of the documents.

Plaintiffs now submit an affidavit of the president of IPC during the time in question. Mr. Thomas Moran states that:

> The district manager in each district had the responsibility and authority to contact directly Kirk Baker, counsel for Independent Petrochemical Corporation, with respect to all matters that in the judgment of the district manager required the attention or assistance of counsel. This included, without limitation, filed or threatened lawsuits against Independent Petrochemical Corporation. In addition, the District Manager was authorized to and responsible for preparing such reports or gathering such information as may have been requested by counsel for Independent Petrochemical Corporation for the purpose of securing such legal advice or assisting counsel in responding to claims or actions against Independent Petrochemical Corporation.

If such a corporate directive or policy did exist, it is at odds with Browne's statement that he did not recall whether anyone asked him to consult with Baker or to prepare the memorandum. Deposition of Gregory F. Browne, November 7, 1985, at 306, 349–50.

Yet it is clear from reading the documents themselves that Browne was instructed by Baker to create the memorandum.

The communications were not in complete confidence in that they were released to two non-lawyers, with the intention that they be relayed to insurance companies. Browne understood them to be used in this fashion, Browne Deposition, at 324–25, and the documents themselves confirm this. Browne did not recall that his communications were meant to be confidential. *Id.* at 386. The memorandum was disseminated, however, only to a select group of individuals with a need to know about the Bliss incident.

Plaintiffs repeatedly argue, incorrectly, that a communication to legal counsel is prima facie made to obtain legal advice. *Diversified,* at 610. The more complete, accurate statement made in *Diversified* is that a matter committed by a corporation to a legal adviser is prima facie so committed for the sake of legal advice to that corporation. It is far too expansive an interpretation to say that any communication made by any employee to a corporation's counsel is prima facie done so for legal advice and therefore is privileged absent some other showing.

The tension underlying discovery issues such as this lies between the need for outsiders to know what a corporation has done and the need for the corporation to secure effective legal advice. In this situation, plaintiffs suggest that all matters an employee thinks require the assistance of counsel should be privileged. From the documents, it is clear that there were no actual or threatened lawsuits at hand, just the possibility of lawsuits somewhere down the road. Browne volunteered the information to Baker without any expectation that it be kept secret. Unlike *Upjohn* and *Diversified* this was not a situation where counsel was conducting interviews of employees at the direction of the corporate control group. Therefore, it does not seem that the communication was made for the purpose of securing legal advice, nor that the employee was directed to make the communication except in a very general

way. The communication was made with the expectation that it would be disseminated outside the corporate structure to the type of entities (insurance companies) which now seek to discover it. The communication is more in the nature of a routine report to the corporate counsel rather than an interview by the counsel of the employee at the specific direction of a corporate superior. Such reports will be made for independent business reasons whether privileged or not. Therefore, there is no need for a privilege to prevent an employee such as this from being inhibited in talking to counsel. The motion for reconsideration is denied.

III. *Defendant Mission Insurance Company's Motion to Stay*

■ On May 28, 1986, defendant Mission moved this court for an order staying all proceedings and trial in this action against Mission pending the outcome of rehabilitation proceedings begun in the Superior Court of the State of California. On October 31, 1985, the California Superior Court entered an order appointing the Insurance Commissioner of California as Conservator of Mission due to Mission's insolvency within the meaning of the California Insurance Code. *Insurance Commissioner of California v. Mission Ins. Co.,* No. C 572724 (Cal.Super.Ct. Oct. 31, 1985). Pursuant to that order, all persons were enjoined by the court from instituting or maintaining any action at law or suit in equity against Mission or its Conservator.

Plaintiffs argue that the October 31 order has been superseded by a March 6, 1986 order by the same court which approved an application for authority to reinsure the business of Mission. *Insurance Commissioner of California v. Mission Ins. Co.,* No. C 572724 (Cal.Super.Ct. Oct. 31, 1986). Basically, that order approved a rehabilitation plan worked out in a Letter Agreement between Mission and the California Insurance Commissioner. As plaintiffs see it, this effectively terminated the rehabilitation process and no stay is warranted.

**6**

This court reads the March 6, 1986 order as authorization by the Superior Court for the Conservator to proceed with a tentative plan for rehabilitation. A definitive agreement has not yet been reached; rather the court said that:

> Upon the execution of the Definitive Agreement and other documents to carry out the provisions and intent of the Letter Agreement, the Insurance Commissioner shall file the appropriate application for approval of said Agreement or Agreements.

*Id.* at 4. The court did not vacate its October 31, 1986 order. Instead, it views the rehabilitation process as ongoing. This is not surprising since the Letter Agreement, to become effective, requires approval of three different state insurance commissions and of 70 percent of the reinsurers defined as having an interest. *See* Letter Agreement, Exhibit B to Plaintiffs' Opposition to Motion to Stay, filed June 11, 1986, at 10–11.

This court finds that the best interests of litigation are served by staying these proceedings as regards defendant Mission pending completion of the California state proceedings. *See Dellinger v. Mitchell,* 442 F.2d 782 (D.C.Cir.1971). The purpose of rehabilitation is the preservation of the company and the removal of the causes of insolvency. It would be detrimental to plaintiffs and other Mission policy holders to allow suits to proceed against Mission at a time when it is struggling to lift itself from the brink of insolvency. For that reason, Mission's motion to stay is granted until such time as the rehabilitation process is complete and the Superior Court of California explicitly vacates its order of October 31, 1985. Mission shall continue to be served with all pleadings, discovery and correspondence, and shall be allowed to continue to attend hearings, pretrial proceedings, and depositions.

## IV. *Defendant Midland Insurance Company Motion to Dismiss/Stay*

■ Defendant Midland moves this court to dismiss these proceedings as against it or, in the alternative, for a stay of all proceedings against it pending the outcome of liquidation proceedings before the Supreme Court of the State of New York. On April 3, 1986, an order of liquidation was filed in the Supreme Court authorizing and directing the New York Superintendent of Insurance to take possession of Midland's property and to liquidate the business and affairs of Midland. *In Re Midland Insurance Company,* No. 41294–1986 (N.Y.Sup.Ct. Apr. 3, 1986). The order provides that all claimants who have claims against Midland are permanently enjoined from bringing any action against Midland or the Superintendent. Instead, all claimants must file those claims in the liquidation proceeding.

Midland believes this court should afford that court's ruling full faith and credit, which would make proceeding before this court on claims against Midland a moot issue. Therefore, the action should be dismissed or, at a minimum, stayed pending the outcome of the liquidation proceeding. *Anshutz v. J. Ray McDermott Co.,* 642 F.2d 94 (5th Cir.1981); *Janak v. Allstate Ins. Co.,* 319 F.Supp. 215 (W.D.Wis.1970).

Plaintiffs believe that this matter should not be stayed against Midland because it would impose duplication of effort, delay and prejudice to plaintiffs. Plaintiffs believe abstention should be narrowly construed, especially when a case is fairly advanced. Plaintiffs reject *Janak* and *Anshutz* as not fitting the circumstances of this case. Plaintiffs argue that the matter should proceed against Midland since, even if it is bankrupt, liquidation merely vests the corporate charter in the New York Superintendent of Insurance.

This court finds that the matter should be stayed against Midland just as it should against Mission Insurance. The New York proceedings should be given deference to allow an orderly liquidation process. The matter should not be dismissed until the outcome of the proceedings is determined. The nature of this action, which is largely declaratory, is such that plaintiffs will not have to undergo a significant repetition of litigation if Midland survives the liquidation proceedings. Midland shall continue

to be served with all pleadings, discovery, and correspondence, and shall be allowed to continue to attend hearings, pretrial proceedings, and depositions.

## V. *Conclusion*

Today's Memorandum and Order do not address the remaining motions in this case. Still pending are INA's motion for partial summary judgment, plaintiffs' cross-motion against INA for partial summary judgment, Traveler's motion for partial summary judgment, Continental's motion for partial summary judgment, and Hartford's motion for partial summary judgment. Those motions remain under advisement.

After filing the motion, opposition, and reply papers to which they are entitled, plaintiffs and INA now seek to file supplemental papers regarding their cross-motions for partial summary judgment. To ensure an orderly progression of pleadings in this suit, the court declines to allow the parties to do this.

An appropriate Order accompanies this Memorandum.