674 F.Supp. 354 (1987)
INDEPENDENT PETROCHEMICAL CORPORATION, et al., Plaintiffs,
v.
AETNA CASUALTY & SURETY COMPANY, et al., Defendants.
Civ. A. No. 83-3347.
United States District Court, District of Columbia.
January 8, 1987.
Jerold Oshinsky, Anderson, Baker, Kill & Olick, Washington, D.C., for plaintiffs.
*355 Stephen L. Nightingale, Washington, D.C., for Aetna Cas. & Sur. Co.
Lawrence E. Carr, Jr., Washington, D.C., for Continental Ins. Co.
John P. Arness, Washington, D.C., for Hartford Acc. & Indem. Co.
Dennis Flannery and Wm. J. Perlstein, Washington, D.C., for Insurance Co. of North America.
Barry R. Ostrager, New York City, for Travelers Indem. Co.
Richard H. Gimer, Washington, D.C., for American Employers' Ins. Co. and Commercial Union Ins. Co.
Peter Schlesinger, New York City, Michael Nussbaum and Earl C. Dudley, Jr., Washington, D.C., for Certain Underwriters at Lloyd's, London and London Market Ins. Companies.
Richard H. Gimer, Santarelli & Bond, Washington, D.C., for Commercial Union Ins. Co.
James C. Gregg and James W. Greene, Washington, D.C., for Continental Cas. Co., North Star Reinsurance Corp., American Reinsurance Co., and Unigard Mut. Ins. Co.
John P. Arness, Robert E. Heggestad, Washington, D.C., for First State Ins. Co.
Casey, Scott & Canfield, P.C., Washington, D.C., for Harbor Ins. Co.
James P. Schaller and M. Elizabeth Medaglia, Washington, D.C., for American Home Assur. Co., Insurance Co. of State of Pa., and Lexington Ins. Co.
Jas. T. Wharton, Jas. C. Gregg and Jas. C. Greene, Washington, D.C., for Midland Ins. Co.
Robert F. McDermott, Jr., Lawrence P. Postol, Jones, Day, Reavis & Pogue, Washington, D.C., for Corporate Ins. & Reinsurance Co. Ltd.
Andrew H. Marks, Crowell & Moring, Washington, D.C., Alan Miller, Bethesda, Md., for U.S. Fire Ins. Co.
Paul L. Friedman, Carolyn B. Lamn, Michael D. Sullivan, White & Case, Lloyd H. Randolph, Craig Alan Wilson, Washington, D.C., for Pacific Indem. Co.

MEMORANDUM
FLANNERY, District Judge.
This matter came before the court on the Motion for Partial Summary Judgment of defendant Insurance Company of North America ("INA"), originally filed on March 14, 1986, and supplemented on May 19, 1986, and on plaintiff's cross motion for Partial Summary Judgment against INA.

I. Background

This action arises out of a series of sprayings by agents of plaintiff Independent Petrochemical Corp. ("IPC") of petroleum products allegedly contaminated with dioxin, a hazardous waste. These sprayings occurred in Missouri in the early 1970's. Plaintiffs IPC and its parent companies, The Charter Company ("TCC") and Charter Oil Company ("COC"), brought this action against their insurers from the period 1971 to the present, seeking indemnification and defense from some 60 actions filed against plaintiffs in Missouri state courts. A more detailed exposition of the background of this case may be found in this court's February 4, 1986 Memorandum. See IPC v. Aetna, 654 F.Supp. 1334, 1339-1341 (D.D.C.1986) ("February 4 Opinion").
In a prior ruling, this court held that Missouri law governs the trigger-of-coverage issue, see IPC v. Aetna, 654 F.Supp. 1334, 1349 (D.D.C.1986) ("May 2 Opinion"), and that the applicable trigger-of-coverage is the time, determined retrospectively, when the effects of exposure to dioxin negligently released by plaintiffs actually resulted in an injury in fact to one of the underlying dioxin-related claimants. Id. at 1354; IPC v. Aetna, 672 F.Supp. 1, 2 (D.D. C.1986) ("August 8 Opinion"). The court further held that:
Notwithstanding defendants' duty to indemnify, any defendant primary insurance carrier is not obligated to indemnify plaintiffs if it can demonstrate upon motion that its insurance policy does not apply to the underlying dioxin-related claims because of some conduct on the part of plaintiffs (such as fraud or lack *356 of notice) or some exclusion provision of the policy.
May 2 Opinion at 1366. INA seeks to show precisely this in the Motion for Partial Summary Judgment now before the court.

II. INA's Motion for Partial Summary Judgment

INA contends that in the fall of 1980 plaintiffs entered into negotiations with INA to obtain a primary general liability policy. According to INA, plaintiffs failed to disclose to INA the existence of several dioxin-related cases that had been filed between 1974 and 1979. INA states that it had no independent knowledge of these actions, some of which had settled, and one of which sought damages of $14 million. See INA's Statement of Material Facts as to Which There is No Genuine Issue, ¶¶ 3, 5. INA contends that this nondisclosure by plaintiff was as a matter of law material to INA's decision to insure plaintiff for the risks for which plaintiff now seeks indemnification, and that this compels the court to enter summary judgment in favor of INA as to the policies it issued to plaintiff between 1981 and 1983.

A. Choice of Law:

As a threshold matter, INA contends that Florida law controls the issue of nondisclosure and its consequences, and that plaintiffs do not dispute the applicability of Florida law to this issue. INA Reply Memorandum at 16-17. As stated in this court's May 2 Opinion, "the local law of the state which has the `more substantial interest' in the resolution of an issue must be applied" under the choice of law rules of the District of Columbia. May 2 Opinion at 13, n. 10, citing Lee v. Flintkote, 593 F.2d 1275, 1279 n. 16 (D.C.Cir.1979); Clayman v. Goodman Properties, Inc., 518 F.2d 1026, 1030 n. 22 (D.C.Cir.1973); Fowler v. A & A Co., 262 A.2d 344 (D.C.1970); Stevens v. American Serv. Mut. Ins. Co., 234 A.2d 305, 309 (D.C.1967).
Courts are not bound to decide all issues under the local law of a single state; rather, each issue is to receive separate consideration. See Restatement (2d) of Conflicts of Law § 188 (1971). Thus, the fact that Missouri law controls the trigger-of-coverage issue is of no significance to this separate question. Unlike the trigger-of-coverage issue, as to which the location of the insured risk was deemed paramount, see May 2 Opinion at 15-16, the issue of nondisclosure in negotiating and forming a contract is appropriately resolved according to the law of the state in which negotiations took place and the contract was formed. This is so because in weighing the five factors which a court must consider in resolving choice of law problems, the place of contracting and the place of negotiation of the contract emerge as far more significant than the place of performance, location of the subject matter of the contract, or place of business of the parties. See Koro Co., Inc. v. Bristol Myers Co., 568 F.Supp. 280, 286 (D.D.C.1983), citing Restatement (2d) of Conflict of Law § 188 (1971). Florida, the state in which negotiation and formation occurred, has the most substantial interest in seeing its laws applied to the conduct of parties negotiating for insurance in its jurisdiction.
This is especially so where, as here, the Florida statute seeks to protect its insurers from liability for claims as to which the insured failed to disclose material facts. The relevant Florida statute provides:
(1) All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by or on behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless either:
(a) Fraudulent; or
(b) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
(c) The insurer in good faith either would not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage *357 with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.
Fla.Stat. § 627.409 (1981). It is under this statute that plaintiffs' conduct in negotiating and entering into insurance contracts with INA must be measured.

B. Interpretation of Florida Law:

INA contends that Section 627.409(1) of the Florida Statutes frees it from liability regardless of plaintiffs' intent in failing to disclose information on the dioxin-related actions filed in the five-year period preceding the parties' negotiations. INA relies upon the recent Florida Supreme Court case of Continental Assurance Co. v. Carroll, 485 So.2d 406 (1986). In that case, the Florida Supreme Court held that:
... where either an insurer would have altered the policy's terms had it known the true facts or the misstatement materially affects risk, a nonintentional misstatement in an application will prevent recovery under an insurance policy.
Id. at 409. INA argues that the Continental decision mandates partial summary judgment for INA irrespective of plaintiffs' excuses or explanations for failing to disclose the dioxin-related actions against it about which plaintiffs knew.
In response, plaintiffs state that during negotiations plaintiffs disclosed fully all the information that INA sought, and that INA mischaracterizes its requests to plaintiffs when it suggests that information on the dioxin-related claims filed between 1974 and 1979 was encompassed in those requests. Plaintiffs explain in their Memorandum in Opposition to Defendant INA's Motion for Partial Summary Judgment ("Plaintiffs' Opposition") that plaintiffs' liability carriers had assigned the five dioxin-related actions filed between 1974 and 1979 to prior policy periods. That is, in summarizing claims information, plaintiffs and plaintiffs' carriers looked not to the calendar year of the filing of the action, but to the policy year to which a claim was assigned, and in which the carrier established reserves for that claim. See Plaintiffs' Opposition at 6-8. Because the five dioxin-related actions arose from allegedly negligent conduct that took place in 1971, Travelers Indemnity Company assigned all five claims to the 1971 policy year; Hartford assigned one action to the 1972 policy year; Aetna assigned one action to the 1974 policy year. None of the five claims was assigned to a policy year within five years of the IPC-INA negotiations, and it was only this preceding five year period about which INA sought claims information summaries.
Plaintiffs' explanation precludes summary judgment for INA. Under Fla. Stat. § 627.409(1), and under the Continental case upon which INA places such emphasis, a misrepresentation or nondisclosure of information material to an insurer's decision to insure does indeed bar recovery under the policy. However, such misrepresentation or nondisclosure must be in response to an insurer's request for that information. In Continental, for example, plaintiff insureds were the parents of a newborn whose physician had diagnosed a heart murmur. Yet on their application for life insurance for the child, the parents responded "normal" to the insurer's question about the child's health, and "none" to the insurer's question about their pediatrician's prescribed treatments. In this context, the `good faith' of the insureds was held not to mitigate their nondisclosure of information material to the insurer's decision to insure their child's life. 485 So.2d at 409.
In the instant case, however, the court cannot determine as a matter of law whether plaintiffs were asked to provide claims information on the five calendar years preceding their negotiations with INA, or on the five preceding policy years. Rather, this is a question of fact that precludes summary judgment. The question is made more difficult by the fact that plaintiffs did not complete an application prepared by INA in a question-and-answer format, as had the insureds in Continental. Instead, at their first meeting, IPC provided INA with a large binder of information (the "Submission") that contained, among other things, claims information for the 1975 *358 through 1979 policy years, as well as year-to-date information for the 1980 policy year. It did not contain information on the dioxin-related claims for the reasons discussed above.[1] Thus it is impossible to determine as a matter of law whether or not the Submission was responsive to INA's requests, or whether the parties concurred in the belief that the policy year, not calendar year, was the operative reference point for information submitted.
On a motion for summary judgment, all inferences must be drawn in the light most favorable to the non-moving parties. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed. 2d 538 (1986). Given IPC's explanation of the distinction between policy years and calendar years, as well as the assignment by three other carriers of 1974-1979 claims to pre-1975 policy years, it is more than plausible that IPC's Submission fully disclosed the information sought by INA. It is up to the finder of fact to determine what `years' INA sought information on, as well as what the standard insurance industry practice is with respect to the assignment of claims to policy years different from the calendar years in which those claims are filed. It is not for the court to determine on a motion for summary judgment.
INA's argument that any excuse or explanation offered by IPC is irrelevant under Florida law is incorrect. As the United States District Court for the Middle District of Florida held in the case of Roess v. St. Paul Fire and Marine Ins. Co., 383 F.Supp. 1231 (M.D.Fla.1974) (applying Fla. Stat. § 627.409):
... the [Florida disclosure] statute simply does not apply to concealment or other species of fraud not related to questions asked or representations made either on an application form or during the course of other special negotiations preceding issuance of the policy.
Id. at 1236. Continental does not alter this holding. Where the statute does not apply because the nondisclosure was of information not solicited by the insurer, common law controls. The Roess court further held that:
The modern [common law] rule seems to be that the insurer has a duty to make inquiry concerning matters deemed by it to be material to the risk, and the insured is entitled to a presumption that information not requested is deemed immaterial. Thus, where no inquiry is made about matters alleged to have been concealed, the insurer may avoid the policy only by proving that the concealment was in fact material and, further, that the withholding of such information was intentional and fraudulent.
Id. at 1237, citing 9 Couch on Insurance (2d) § 38:72; 18 Fla.Jur., Insurance §§ 572, 577; American Ins. Co. v. Robinson, 120 Fla. 674, 163 So. 17 (1935); Massachusetts Bonding and Ins. Co. v. Hoxie, 129 Fla. 332, 176 So. 480 (1937). Because (1) it is not clear that INA sought claims information for calendar years 1975-1980, as opposed to those policy years; and (2) INA did not request claims information for the pre-1975 period; and (3) IPC asserts that the dioxin-related claims were properly assigned to pre-1975 policy years, it is the common law rule, not the Florida statute, that would apply should a finder of fact agree with IPC's version of the IPC-INA negotiations.
In addition, it should be noted that the question of the materiality of IPC's alleged nondisclosure is an issue to be decided by a finder of fact, not by the court on a motion for summary judgment. INA's retrospective assertion that it would have acted differently had it known of the dioxin-related claims is insufficient to sustain INA's burden on a motion for summary judgment. Indeed, to read Fla.Stat. § 627.409(1) as broadly as INA urges this *359 court to do would give insurers the power to play `Monday morning quarterback,' potentially voiding all policies that prove to have been bad gambles for them, by uncovering some fact  not solicited at the time of the contract's formation  that might have subsequently burgeoned into a claim upon the insurer. The Florida disclosure statute is not intended for such use; its protections are more limited. For all these reasons, INA's Motion for Partial Summary Judgment is denied.[2]

III. IPC's Cross-Motion for Partial Summary Judgment

IPC further defends against INA's Motion for Partial Summary Judgment by contending, in its own cross-motion, that INA has waived any right it may have had to assert the defense of nondisclosure by its failure to raise that defense earlier in time. IPC notes that INA did not raise the defense of nondisclosure when, in 1983, it first denied IPC's claims for indemnification of dioxin-related actions against it, although, as IPC claims, INA knew of the first five dioxin-related actions by December, 1982. This failure to raise the defense, IPC argues, bars INA from asserting it now as grounds for avoiding the policy.
Once again, as a threshold matter, the court must decide what law to apply to the waiver of defenses issue. Because the question of waiver is so entwined with the issue of nondisclosure, and because Florida has such a strong interest in that issue, see supra, § II A, Florida law must apply to the question of waiver as well. It would make little sense for that availability of a defense created by Florida law to be controlled or limited by the law of another jurisdiction.
Florida law provides:
A liability insurer shall not be permitted to deny coverage based on a particular coverage defense unless:
(a) within 30 days after the liability insurer knew or should have known of the coverage defense, written notice of reservation of rights to assert a coverage defense is given to the named insured by registered or certified mail sent to the last known address of the insured or by hand delivery; and
(b) within 60 days of compliance with paragraph (a) or receipt of a summons and complaint naming the insured as a defendant, ... the insurer:
(1) gives written notice to the named insured by registered or certified mail of its refusal to defend the insured; ...
Fla.Stat. § 627.426(2) (1981).
IPC depends upon a letter dated December 16, 1982, for its assertion that INA "knew or should have known" the facts supporting its nondisclosure defense. The letter was written upon the filing of what has come to be known as the "second series" of dioxin-related claims, see Plaintiffs' Memorandum in Support of its Cross-Motion for Partial Summary Judgment at 3 (Plaintiffs' Cross-Motion), and briefly alluded to the first series of five dioxin-related claims that had been filed between 1974 and 1979. Specifically, the letter read:
In 1971, I.P.C. acted as a broker for Russell Bliss' waste oil disposal service. One of I.P.C.'s customers for this service was North East Pharmaceutical and Chemical Co. ("NEPACCO"). Bliss picked up waste oil from NEPACCO and instead of properly disposing of it, used the oil to suppress dust at at least three horse stables, one of which was Bubbling Springs Stables. I.P.C.'s liability insurance carriers settled suits for death and injury to horses at two stables. No claim was ever filed by Bubbling Springs Stables. Lawsuits were filed against *360 I.P.C. and Bliss by individuals associated with two other stables alleging dioxin exposure and bodily injury. These suits are still open.

Exhibit B to Fourth Terbrueggen Affidavit; Plaintiffs' Cross-Motion at 3-4.
IPC believes that this letter provided INA with the information necessary to assert the defense of nondisclosure, and that INA's failure to comply with the requirements of the Florida statute results in a waiver of that defense by INA. Plaintiffs' argument fails in one critical respect: the December 16, 1982, letter cannot be said to have provided INA with knowledge sufficient to assert the defense of nondisclosure. The remainder of plaintiffs' argument, constructed on this faulty premise, must therefore fall. The December, 1982, letter alludes to "[l]awsuits ... filed against I.P.C.," but gives no dates or specific underlying facts about those lawsuits such that INA might draw legal conclusions as to its own rights and obligations as IPC's insurer. It would be unfair and inappropriate to deny INA a possible defense based on the sketchy one-paragraph summary of pre-1980 dioxin-related litigation contained in the December, 1982, letter. Indeed, summary judgment cannot be entered in favor of IPC, for it cannot be said as a matter of law that these few sentences gave INA the knowledge that triggers the notice requirements of the Florida statute.
The court need not find that INA did not have knowledge of the pre-1980 dioxin-related claims. Rather, it need only find that there exists a genuine issue of material fact as to whether the December 16, 1982, letter imparted that knowledge to INA. Such a genuine issue arises from the vagueness of the letter itself. IPC may be able to prove INA's knowledge at trial, but as the record now stands, plaintiffs' Motion for Partial Summary Judgment must be denied.
An appropriate Order accompanies this Memorandum.

ORDER
This matter came before the court on the Motion for Partial Summary Judgment of defendant Insurance Company of North America, and on Plaintiffs' Cross-Motion for Partial Summary Judgment against defendant Insurance Company of North America. Upon consideration of the motions, the oppositions thereto, and the entire record herein, and for the reasons set forth in the accompanying Memorandum, it is by the court this 8th of January, 1987
ORDERED that the Motion for Partial Summary Judgment of defendant Insurance Company of North America is denied; and it is further
ORDERED that plaintiffs' Cross-Motion for Partial Summary Judgment against defendant Insurance Company of North America is denied.
NOTES
[1] This memorandum does not purport to limit the Florida disclosure statute to insurance policies for which a formal application has been completed by an insured. Rather, it is limited to the observation that a less formal negotiation process makes it all the more difficult to determine what information an insurer sought from the prospective insured. The facts of this case, with the ambiguity between policy and calendar year, illustrate this point. The consequence of this observation is that summary judgment must be denied.
[2] Plaintiffs also note that discovery produced a page of handwritten notes in INA's files with the words "dioxin" and "horse farm" on it, indicating that INA may have had actual knowledge of the dioxin-related claims it now asserts its ignorance of at the time it agreed to insure IPC. See Plaintiffs' Opposition at 24, and Appendix 4 thereto. The court need not reach this ground for denying INA's motion, but it is worth noting that INA has offered the affidavit of the author of those notes, averring that they were made in 1984, not, as plaintiffs speculate, in 1980 or 1981. See INA's Reply at 5, and Attachment 1 thereto.