Environamics v. Master Pump          CV-96-476-M 01/08/97
                 UNITED STATES DISTRICT COURT FOR THE
                       DISTRICT OF NEW HAMPSHIRE


Environamics Corporation,
      Plaintiff

      v.                                      Civil No. 96-476-M

Master Pump Company,
      Defendant.



                             O R D E R


      Environamics Corporation brings this diversity action

against Master Pump Company ("Master Pumps"),[1] seeking to recover

damages it sustained as a result of Maser Pumps' alleged breach

of contract.  Presently before the court is Master Pumps' motion

to dismiss for lack of personal jurisdiction.



                             **Background**

      Environamics is a Delaware corporation, with a principal

place of business in Hudson, New Hampshire.  It manufactures and

sells pumps and pump technology for use in industrial

applications, such as petrochemical plants, paper mills, and food

---

   [1]  Although identified by plaintiff as "Master Pump Company,"
the corporate defendant is actually "Master Pumps and Equipment
Corporation."

processing facilities.  It manufactures its products exclusively in New Hampshire and sells those products primarily through a series of distributors located throughout the country.  Master Pumps is a Delaware corporation, with its principal offices in Dallas, Texas.  It was established in 1968 to provide repair services to oil field engines, compressors, and pumps.  In 1972, it began operations as a distributor for a number of pump manufacturers.  It operates exclusively in the southwestern United States and has never maintained an office or presence in New Hampshire.

In 1995, Environamics approached Master Pumps and solicited it to act as one of Environamics' distributors.  The parties met in Dallas to negotiate a possible agreement.  Subsequent negotiations took place via telephone, facsimile, and mail between New Hampshire and Texas.  Eventually, Master Pumps agreed to be a distributor for Environamics, apparently believing that it would be distributing Gould Pumps.  Environamics presented Master Pumps with a Distributor Agreement and claims that the terms of that agreement govern the parties' relationship.  Master Pumps, on the other hand, counters that before executing the form Distributor Agreement, it made several revisions to it and says

2

that Environamics never executed that revised agreement. The record is decidedly unclear on that point, as the parties have submitted substantially different versions of the Distributor Agreement, each claiming that its own submission is the relevant document.

Despite the apparent confusion surrounding the status of the Distributor Agreement itself, Master Pumps placed a purchase order with Environamics. Environamics claims (and Master Pumps does not dispute) that the initial shipment of pumps by Environamics was delivered FOB ("free on board") Hudson, New Hampshire. Accordingly, Master Pumps took delivery and accepted title to that shipment in New Hampshire. Subsequent shipments were delivered FOB Kenner, Louisiana.

In the spring of 1996, apparently at the insistence of Environamics, Master Pumps sent two of its employees to New Hampshire to attend Environamics' Specialist Training School, to receive training with regard to the manufacture, installation, and application of Environamics' pumps. When Master Pumps (and its customers) later learned that Environamics was not supplying Gould Pumps, Master Pumps' business stalled. Environamics claims

3

that Master Pumps breached the Distributor Agreement (or at least its version of the agreement) by failing to make additional purchases of pumps and pump technology, as required by the terms of the Agreement, and by failing to reimburse Environamics fully for pumps that it delivered.

**Jurisdictional Inquiry**

I.   Generally.

It is well established that in a diversity case personal jurisdiction over a nonresident defendant is governed, at least in part, by the forum state's long-arm statute. Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc., 982 F.2d 686, 690 (1st Cir. 1993). And, when personal jurisdiction is contested, the plaintiff bears the burden of establishing that the court has such jurisdiction. Kowalski v. Doherty, Wallace, Pillsbury & Murphy, 787 F.2d 7, 8 (1st Cir. 1986).

Allegations of jurisdictional facts are construed in the plaintiff's favor, Buckley v. Bourdon, 682 F.Supp. 95, 98 (D.N.H. 1988), and, if the court proceeds based upon the written submissions of the parties without an evidentiary hearing, the

4

plaintiff need only make a prima facie showing that jurisdiction exists. Kowalski, 787 F.2d at 8; Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 674-75 (1st Cir. 1992). Nevertheless, the plaintiff's demonstration of personal jurisdiction must be based on specific facts set forth in the record in order to defeat a defendant's motion to dismiss. And, "in reviewing the record before it, a court 'may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgment.'" VDI Technologies v. Price, 781 F.Supp. 85, 87 (D.N.H. 1991) (quoting Lex Computer & Management Corp. v. Eslinger & Pelton, P.C., 676 F.Supp. 399, 402 (D.N.H. 1987))

Before a court may exercise personal jurisdiction over a non-resident defendant, the plaintiff must show, first, that the forum state's long-arm statute confers jurisdiction over the defendant, and second, that the exercise of jurisdiction comports with constitutional due process standards (by establishing that the defendant has sufficient "minimum contacts" with the forum state). Kowalski, 787 F.2d at 9-10. New Hampshire's corporate long-arm statute, N.H. RSA 293-A:15.10, authorizes jurisdiction over foreign corporations to the full extent permitted by federal

law.  McClary v. Erie Engine & Mfg. Co., 856 F.Supp. 52, 54 (D.N.H. 1994).[2]  Stated another way, New Hampshire's corporate long-arm statute is coextensive with the outer limits of due process protection under the federal constitution.  Accordingly, the court's "proper inquiry . . . focuses on whether jurisdiction comports with federal constitutional guarantees."  McClary, supra, at 52.

Before a court may exercise personal jurisdiction over a foreign defendant in a manner consistent with the Constitution, the plaintiff must demonstrate that the defendant has "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Helicopteros Nacionales de Colombia, S.A.

---

[2]  In McClary v. Erie Engine & Mfg. Co., 856 F.Supp. 52 (D.N.H. 1994), this court (Devine, J.) held:

> [T]he Legislature's elimination of the restrictive long-arm language contained in [the former statute] and its provision for the service of foreign corporations by mail demonstrate that it intended RSA 293-A:15.10 to authorize jurisdiction over foreign corporations to the full extent allowed by federal law.  Because RSA 293-A:15.10 reaches to the federal limit, the traditional two-part personal jurisdiction inquiry collapses into the single question of whether the constitutional requirements of due process have been met.

Id., at 55.

v. Hall, 466 U.S. 408, 414 (1984).  And, before finding that a defendant has such "minimum contacts," the court must be satisfied that the defendant's conduct bears such a "substantial connection with the forum state" that the defendant "should reasonably anticipate being haled into court there."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473-75 (1985) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

II.  General v. Specific Jurisdiction.

A court may exercise either general or specific jurisdiction over a defendant.  "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state."  United Elec. Workers v. 163 Pleasant Street Corp., 960 F.2d 1080, 1088 (1st Cir. 1992).  Environamics does not contend that Master Pumps engaged in "continuous and systematic activity" in New Hampshire, nor does it ask the court to exercise general jurisdiction over Master Pumps.  So, if the court may properly exercise personal jurisdiction over Master Pumps, it must be specific jurisdiction.

7

A court may exercise specific jurisdiction when the cause of action arises directly out of, or relates to, the defendant's forum-based contacts.  United Elec. Workers, 960 F.2d at 1088-89. In an effort to assist district courts in determining whether they might properly exercise specific jurisdiction, the Court of Appeals has formulated a three-part test:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state contacts.  Second, the defendant's in-state activities must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable.  Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

United Elec. Workers, 960 F.2d at 1089.

## Discussion

The jurisdictionally relevant facts presented in this case are substantially similar to those in Environamics v. Thelco, No. FED. R. CIV. P. -96-68-M, slip op. (D.N.H. August 26, 1996), cited by Environamics in its opposition to Master Pumps' motion to dismiss.  Here, as in Thelco, Environamics claims (and the facts support) that: (i) Master Pumps knowingly established a long-term contractual relationship with a New Hampshire

8

corporation, which it knew manufactured and sold its products exclusively in and from New Hampshire; (ii) the Distributor Agreement provides that it shall be governed by, and interpreted in accordance with, the laws of the State of New Hampshire (see Burger King, 471 U.S. at 482); (iii) Master Pumps purposefully directed numerous telephone calls, facsimile transmissions, and mail to Environamics and into the State of New Hampshire (see Burger King, 471 U.S. at 476; Sawtelle v. Farrell, 70 F.3d 1381, 1389-90 (1st Cir. 1995)); (iv) consistent with the provisions of the Distributor Agreement, Master Pumps took delivery of at least one shipment of pumps FOB Nashua and, therefore, actually took title to those products in New Hampshire; (v) payments to Environamics under the Distributor Agreement are to be directed to its office in New Hampshire (see Ganis Corp. of California v. Jackson, 822 F.2d 194, 198 (1st Cir. 1987)); and (vi) Master Pumps (albeit at the apparent insistence of Environamics) sent two of its employees to New Hampshire to attend a series of training seminars conducted by Environamics for the benefit of its distributors.

Based upon the foregoing, the court concludes that Master Pumps knowingly and purposefully availed itself of the privilege

of conducting business in New Hampshire, United Elec. Workers, 960 F.2d at 1089-90, and that this litigation (to enforce Master Pumps' alleged obligations under the Distributor Agreement) arises from or relates to Master Pumps' contacts with this state. Id. In light of all of the factors discussed above, the exercise of in personam jurisdiction over Master Pumps is reasonable. See Donatelli v. National Hockey League, 893 F.2d 459, 465 (1st Cir. 1990) (discussing the so-called "Gestalt factors" which a court should consider when determining whether the exercise of personal jurisdiction is appropriate).

In short, Environamics has made a prima facie showing that Master Pumps' conduct bears a sufficiently substantial connection with New Hampshire that it should reasonably have anticipated being haled into court in this forum to answer for its alleged breach of the Distributor Agreement. Master Pumps has established sufficient "minimum contacts with [New Hampshire] that the maintenance of the suit does not offend traditional notions of fair play and substantial justice," Helicopteros Nacionales De Colombia, 466 U.S. at 414, and therefore, the exercise of personal jurisdiction over Master Pumps comports with constitutional due process standards.

10

## Change of Venue

Master Pumps also moves, pursuant to 28 U.S.C. 1404(a), to transfer this case to the United States District Court for the Northern District of Texas.  Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any district where it might have been brought.

Authority to transfer a case pursuant to 28 U.S.C. 1404(a) is committed to the court's broad discretion.  United States ex rel. LaValley v. First Nat'l. Bank, 625 F.Supp. 591, 594 (D.N.H. 1985).  When ruling upon a motion to transfer under Section 1404(a), the court will consider such factors as the "convenience of the parties and witnesses and the availability of documents needed for evidence."  Buckley v. McGraw-Hill, Inc., 762 F.Supp. 430, 439 (D.N.H. 1991).  Master Pumps bears the burden of demonstrating that those factors weigh in favor of transfer.  Id. "[T]he Supreme Court has held that '[u]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'"  Id. (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).

11

Applying this standard, transfer is not warranted here. First, although it certainly would be more convenient for Master Pumps to litigate this matter in Texas, "[t]ransfer is inappropriate if the effect is merely to shift inconvenience from one party to the other." Buckley, 762 F.Supp. at 439 (citations omitted); see also Crosfield Hastech, Inc. v. Harris Corp., 672 F.Supp. 580, 589 (D.N.H. 1987) (in order to justify transfer, the balance of conveniences must strongly favor the moving party). Moreover, the convenience of the witnesses is the most significant factor to be considered in Section 1404(a) analysis. Buckley, 762 F.Supp. at 440. Here, the plaintiff has alleged that most, if not all, of the witnesses so far identified, live in New Hampshire. While it is plain that many of Master Pumps' witnesses reside in Louisiana or Texas and that it would certainly be more convenient for Master Pumps to litigate this matter in Texas, the court cannot conclude that Master Pumps has sufficiently demonstrated that transfer is appropriate.

Finally, the "interests of justice," Gulf Oil Corp., 330 U.S. at 508, do not mandate transfer of this matter. Environamics' principal place of business is in New Hampshire, the majority of the witnesses relating to its claims (as

12

distinguished from those relating to the counterclaims which Master Pumps says it plans to file) are in New Hampshire, the injury, if any, was keenly felt here, and Master Pumps is properly subject to suit in New Hampshire.  In the final analysis, this case belongs in New Hampshire.

## Conclusion

For the foregoing reasons, the court holds that it may, consistent with constitutional requirements of due process and fundamental notions of justice and fairness, exercise in personam jurisdiction over Master Pumps.  Additionally, the court holds that transfer of this matter to the Northern District of Texas is not warranted.  Accordingly, Master Pumps' motion to dismiss and/or transfer (document no. 5) is denied.


SO ORDERED.


_____
Steven J. McAuliffe
United States District Judge

January 8, 1997

cc:  Daniel P. Schwarz, Esq.
     Douglas L. Ingersoll, Esq.January 8, 1997

13