WILLIAM PENN LIFE INSURANCE
COMPANY OF NEW YORK,
Plaintiff–Appellee,

v.

James SANDS, Defendant–Appellant.

No. 89–6017.

United States Court of Appeals,
Eleventh Circuit.

Sept. 25, 1990.

Susan S. Lerner, Preddy, Kutner, Hardy, Rubinoff, Brown, & Thompson, Miami, Fla., for defendant-appellant.

Anne M. McCormick, Brenton Ver Ploeg, Karen H. Curtis, Shutts & Bowen, for plaintiff-appellee.

Before KRAVITCH and COX, Circuit Judges, and DYER, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

In completing a life insurance application, appellant Anthony Pellegrino [1] truthfully and accurately denied, "to the best of [his] knowledge and belief," having cancer or a blood disorder. The district court granted the plaintiff insurance company's motion to rescind the policy because, unbeknownst to Pellegrino, he did in fact suffer from both medical conditions. We vacate the district court's grant of summary judgment because Pellegrino's truthful response to a question based on his "knowledge and belief" cannot be considered a misstatement or misrepresentation in an insurance policy rescission action.

## FACTS

On May 20, 1987, Anthony Pellegrino and Richard Taylor applied to plaintiff William Penn Life Insurance Company of New York ("Penn Life") for life insurance. The policies, each providing $250,000 in cover-

---

1. On January 8, 1990, while this appeal was pending, Anthony Pellegrino died as a consequence of AIDS. Pursuant to F.R.A.P. 43(a), this court approved the substitution of James Sands, the personal representative of Pellegrino's estate, as the appellant in this case.

age and naming the other individual as the primary beneficiary in case of death, were approved by Penn Life and issued on May 26, 1987. In January 1988, Pellegrino tested positive for Human Immunodeficiency Virus (HIV) and was diagnosed as having Acquired Immune Deficiency Syndrome (AIDS). On January 18, 1988, Taylor died as a result of AIDS. Penn Life refused to pay Pellegrino death benefits as the beneficiary under Taylor's policy, and initiated the present action in federal court to rescind both life insurance policies. Pellegrino counterclaimed, seeking payment of benefits under Taylor's policy and a declaration of the continued validity of his own policy.

The district court granted Penn Life's motion for summary judgment, finding that Pellegrino and Taylor's response of "No" to the application question 5h, "Has any person proposed for insurance ever had: tumor, cancer, venereal disease, disorder of blood, skin, thyroid or other glands?," constituted a material misstatement. The court relied on the uncontradicted testimony of Dr. Ronald Wright who opined that both men were infected with HIV and suffered from a form of cancer known as Inflammatory Kaposi's Sarcoma (IKS) of the lymph nodes at the time of their applications. Although Penn Life, for purposes of its summary judgment motion, conceded that neither applicant knew of their diseases at the time they completed their applications, the court found that the defendants' knowledge of their application misstatements was irrelevant under Florida law. Because it was uncontradicted that Penn Life would not have issued the insurance policies had it known that Pellegrino and Taylor suffered from IKS and were HIV infected, the court found a mutual mistake of fact and rescinded the two policies.

## DISCUSSION

On appeal, Pellegrino raises two challenges to the district court's grant of summary judgment. First, he argues that the court misinterpreted Florida law to permit the rescission of an insurance contract for material application misstatements when the applicant had no knowledge that the statements were incorrect. Second, appellant contends that the responses to application question 5h were not misstatements or misrepresentations because the form only required applicants to answer based upon their knowledge and belief.

■ Our review of the district court's grant of summary judgment is plenary. *Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir.1990); *Livernois v. Medical Disposables, Inc.,* 837 F.2d 1018, 1021–22 (11th Cir.1988). We will affirm the district court if, after construing the evidence in the light most favorable to the nonmoving party, we find that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fernandez,* 906 F.2d at 564; *see Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); Fed.R.Civ.P. 56(c).

### A. Unintentional Misstatements Under Florida Law

■ In this diversity action, we apply Florida law to determine whether there were material misrepresentations in the two insurance applications at issue. *Fernandez,* 906 F.2d at 564–65; *United of Omaha Life Ins. Co. v. Sun Life Ins. Co.,* 894 F.2d 1555, 1563 (11th Cir.1990). Florida law provides that

Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the [insurance] policy or contract unless:

(a) They are fraudulent;

(b) They are material either to the acceptance of the risk or to the hazard assumed by the insurer; or

(c) The insurer in good faith would either not have issued the policy or ... would not have issued it [under those particular terms] ... if the true facts had been made known to the insurer as required either by the application for the policy ... or otherwise.

Fla.Stat. § 627.409(1) (1985); *see Continental Assurance Co. v. Carroll,* 485 So.2d

406, 407–08 (Fla.1986). The Florida Supreme Court has unambiguously held that "where either an insurer would have altered the policy's terms had it known the true facts or the misstatement materially affects risk, a nonintentional misstatement in an application will prevent recovery under an insurance policy." *Carroll,* 485 So.2d at 409; *see Life Ins. Co. v. Shifflet,* 201 So.2d 715, 719 (Fla.1967); *see also Fernandez,* 906 F.2d at 565 (similarly interpreting Florida insurance law). As long as the misstatement satisfies subsections (b) or (c) of the statute, it need not be made fraudulently or knowingly to void the policy. *Old Southern Life Ins. Co. v. Kirby,* 522 So.2d 424, 426 (Fla.Dist.Ct.App.1988); *see Fernandez,* 906 F.2d at 565.

The district court found, and the parties do not dispute, that Penn Life would not have issued the policies if it had known of the applicants' illnesses. Therefore, based on our review of Florida law, we find that the district court correctly concluded that a material misstatement in the insurance applications at issue would provide a basis for rescinding the policies even if the applicants could not have known that the statement was incorrect or inaccurate.

### B. Statements Made to "Best of" Applicant's Knowledge

Although we find that the district court accurately interpreted the applicable Florida law, we vacate the grant of summary judgment because the court misapplied the law to the facts of this case.[2] An essential prerequisite to the application of Florida Statutes section 627.409(1) is that the insured make an inaccurate statement in his application. Our review of the case record and the insurance policies at issue leads us to the inescapable conclusion that neither Pellegrino nor Taylor made misstatements warranting the district court's grant of summary judgment to Penn Life.

The pertinent part of the application form used by both men reads: "Questions 3–7 pertain to the Proposed Insured and Family Members and are answered *to the best of my knowledge and belief.*" Penn Life Application For Insurance—Non Medical Declarations, Part II (emphasis added). Following this qualifying introductory statement are a series of questions relating to the health of the insured, including question 5h. At the bottom of the form, just above the signature line of the insured, is the statement "I have carefully read all the above questions; *statements and answers are true to the best of my knowledge and belief.*" *Id.* (emphasis added).

To construe properly the applicants' responses to question 5h, their answers must be read, as the insurance form itself emphasizes repeatedly, in conjunction with the qualifier "to the best of my knowledge and belief." Read completely and in context, question 5h asked the applicants whether,

**2.** Penn Life contends that we must decline to consider Pellegrino's argument concerning the effect of the "knowledge and belief" language on the insurance contract because it was raised for the first time on appeal. *See Smith v. Horner,* 839 F.2d 1530, 1536 (11th Cir.1988). This argument is meritless. Here, unlike in *Smith,* Pellegrino's general theory of relief, that the responses on the applications were not misstatements warranting rescission under the Florida statute, was raised repeatedly before the district court.

Furthermore, Pellegrino also raised the specific argument concerning the phrasing of question 5h in a motion for reconsideration. *See Fackelman v. Bell,* 564 F.2d 734, 736 n. 1 (5th Cir.1977).* *Cf. Lazzara v. Howard A. Esser, Inc.,* 802 F.2d 260, 269 (7th Cir.1986) (issue deemed waived when party failed to raise it before trial court in opposition memorandum to motion for reconsideration); *Conley v. Board of Trustees of Grenada County Hosp.,* 707 F.2d 175, 178 (5th Cir.1983) (issue deemed waived when party failed to raise it before trial court in motion for reconsideration). In an order denying the motion, the district court ruled that the merits of the reconsideration motion were disposed of in its previous order. *William Penn Life Ins. Co. v. Pellegrino,* No. 88–6774–CIV–JAG (S.D.Fla. Sept. 19, 1989) (order denying motion for reconsideration). The trial court did not view the contentions raised in Pellegrino's motion as new theories for relief; indeed, the court summarized the defendant's motion as "merely assert[ing] that this court's prior order was wrong." Because the district court was properly presented with Pellegrino's argument, we may review it on appeal. *See Singleton v. Wulff,* 428 U.S. 106, 120–21, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976).
* The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

"to the best of [their] knowledge and belief ... has any person proposed for insurance ever had: ... tumor, cancer, venereal disease, disorder of blood, skin, thyroid or other glands?" Both applicants checked off "no." Penn Life concedes for purposes of its summary judgment motion that neither applicant knew they had any of the conditions listed in question 5h. Given this concession, Pellegrino and Taylor's responses to question 5h were neither misstatements nor misrepresentations; they were entirely truthful and accurate. Because a rescission action under section 627.-409(1) must, pursuant to the statutory terms, be premised on "[m]isrepresentations, omissions, concealment of facts, [or] incorrect statements," the applicants' accurate response to question 5h precludes a grant of summary judgment to Penn Life.

This result is consistent with the reasoning of *Skinner v. Aetna Life & Casualty*, which considered the interplay between an insurance statute[3] and contract[4] that are almost identical to those in this case. 804 F.2d 148, 149–51 (D.C.Cir.1986). *Skinner* held that insurance statutes which "assure the insured of certain basic protections ... do not preclude the parties to an insurance contract from entering into an agreement 'more favorable to the insured than the statute prescribes.'" *Id.* at 150; *accord King v. Allstate*, 906 F.2d 1537, 1539–41 (11th Cir.1990); *State Farm Fire & Casualty Co. v. Oliver*, 854 F.2d 416 (11th Cir. 1988). The court concluded that

> [i]n the case before us, [the insurer] chose to include language in its group

insurance enrollment form that had the effect of shifting the focus, in a determination of the truth or falsity of an applicant's statement, from an inquiry into whether the facts asserted were true to whether, on the basis of what he knew, the applicant believed them to be true. Thus [the applicant's] answer must be assessed in the light of his actual knowledge and belief.

*Skinner*, 804 F.2d at 150.

The Eleventh Circuit has reached a similar result in evaluating the effect of insurance contract language that provided an applicant with greater protection than the relevant state insurance statute. *See Oliver*, 854 F.2d at 419–20. The Alabama statute at issue[5] was in all material respects identical to Florida Statutes section 627.409. Although the statute, like its Florida counterpart, did not require a material misstatement to be intentional in order to void an insurance policy, a clause in the policy itself stated that the contract would be void if the insured *"intentionally* concealed or misrepresented any material fact or circumstance relating to this insurance." *Oliver*, 854 F.2d at 418 (emphasis original). This court held that the contract could not be rescinded absent proof of an intentional misstatement because "once [the insurer] has set its own standard by contract for judging misrepresentations and concealment, it cannot rely on a statute that imposes more stringent requirements on an insured." *Id.* at 419; *see King*, 906 F.2d at 1541–42 (policy language establishing intentional misstatement standard governs insurance contract rather than state or

---

**3.** The insurance statute at issue in *Skinner* provided that:

> The falsity of a statement in the application for any policy of insurance shall not bar the right to recovery thereunder unless such false statement was made with intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the company.

804 F.2d at 149 (quoting D.C.Code Ann. § 35–414 (1981)).

**4.** The insurance application reviewed in *Skinner* qualified the form's questions with a concluding sentence stating: "THE FOREGOING STATEMENTS AND ANSWERS ARE TRUE AND COMPLETE TO THE BEST OF MY KNOWLEDGE AND BELIEF." 804 F.2d at 150.

**5.** Alabama Code § 27–14–7 provides in part:

> Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent recovery under the policy or contract unless either:
> (1) Fraudulent;
> (2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or
> (3) The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract [under those particular terms].

*See Oliver*, 854 F.2d at 418 (quoting statute).

maritime law that permits rescission for unintentional misstatements).

The reasoning of *Skinner* and *Oliver* is fully applicable to this case.[6] The "knowledge and belief" language used by Penn Life in its application forms imposed a different requirement of accuracy than that provided in section 627.409.[7] Pellegrino and Taylor's responses were in full accordance with this standard and provided truthful and accurate responses to the question they were asked.

■ Furthermore, section 627.409(1) is inapplicable to the concealment of information not solicited by the insurer. *Independent Petrochemical Corp. v. Aetna Casualty & Sur. Co.*, 674 F.Supp. 354, 357–58 (D.D.C.1987); *see Roess v. St. Paul Fire & Marine Ins. Co.*, 383 F.Supp. 1231, 1236 (M.D.Fla.1974) (similarly interpreting same Florida statute). In order for an insurer to rescind a policy due to a misstatement in the insured's application, "such misrepresentation or nondisclosure must be in response to an insurer's request for that information." *Independent Petrochemical*, 674 F.Supp. at 357. Here, Penn Life only requested the disclosure of information to the best of the insured's knowledge and belief. This is precisely the information that was provided by Pellegrino and Taylor. We agree with the pointed observation made by the district judge in *Independent Petrochemical* that:

> to read Fla.Stat. § 627.409(1) as broadly as [the insurer] urges this court to do would give insurers the power to play 'Monday morning quarterback,' potentially voiding all policies that prove to have been bad gambles for them, by uncovering some fact—not solicited at the time of the contract's formation—that might have subsequently burgeoned into a claim upon the insurer. The Florida disclosure statute is not intended for such use; its protections are more limited.

674 F.Supp. at 358–59. We decline Penn Life's invitation to protect it from a risk it assumed by virtue of the contractual language it drafted.

To facilitate the trial of this case on remand, and consistent with our interpretation of *Carroll* and Florida law, we note that the presence of a "knowledge and belief" provision in a policy will not insulate an applicant's responses from all review. We approve the following test adopted by the D.C. Circuit for examining responses to questions asked according to the applicant's knowledge and belief:

---

6. Penn Life's attempt to circumvent the reasoning of these cases is unpersuasive. The insurer correctly notes that the insurance application considered in *Carroll* contained "knowledge and belief" language similar to that found in this case. *See Carroll*, 485 So.2d at 407. Because *Carroll* reiterated the accepted Florida rule that unintentional misstatements may provide a basis for contract rescission, Penn Life urges that the presence of "knowledge and belief" language in an insurance application is irrelevant.

The suggestion that "knowledge and belief" language is irrelevant to the interpretation of an insurance form is not only illogical but is not supported by *Carroll*'s narrow holding. The *Carroll* court never addressed the argument raised in this case that such language can affect the interpretation of the responses provided in a policy application. Additionally, in *Carroll*, the applicants' statements concerning the insured's health were inaccurate because they had sufficient information available for a reasonable person to *know* that the insured was not healthy. *See Carroll*, 485 So.2d at 406–07 (parents of insured baby had been told that infant had a heart murmur and needed both an EKG and x-rays). In the present case, however, we must assume for purposes of reviewing the summary judgment grant that Pellegrino and Taylor reasonably believed that their answers to the application questions were accurate.

7. Had Penn Life intended to retain the ability to void the contract based on any inaccuracy, it should not have used the "knowledge and belief" qualifying language. Such language would reasonably induce an insurance applicant to believe that they were covered under the policy if they answered the questions to the best of their knowledge and the insurer subsequently issued the policy. To permit an insurer to rescind a policy containing "knowledge and belief" language due to an unknowing misstatement not only contravenes the terms of the contract itself, but is unfair as well. Insurance applicants faced with a policy that unambiguously stated that it could be voided for unknowing misstatements *might have rejected those terms* and sought another policy, or they might have undergone a full physical examination to ensure that their beliefs as to their health conformed to their representations. Conversely, had Penn Life really thought it essential to know the actual physical condition of its applicants, it could have mandated a physical examination as a condition of issuing a policy.

[T]he twin qualifiers [knowledge and belief] require[ ] that knowledge not defy belief.... What the applicant in fact believed to be true is the determining factor in judging the truth or falsity of his answer, but *only* so far as that belief is not clearly contradicted by the factual knowledge on which it is based. In such event, a court may properly find a statement false as a matter of law, however sincerely it may be believed. To conclude otherwise would be to place insurance companies at the mercy of those capable of the most invincible self-deception—persons who having witnessed the Apollo landings, still believe the moon is made of cheese.

*Skinner*, 804 F.2d at 151 (emphasis original).

## CONCLUSION

Because the district court erred in finding that Pellegrino and Taylor's responses to question 5h were misstatements warranting rescission under Florida Statutes section 627.409(1), the court's grant of summary judgment to Penn Life must be vacated. On remand Penn Life may litigate its other bases for denying coverage, including any claim that Taylor or Pellegrino did, in fact, knowingly misstate their responses to the application questions.

VACATED AND REMANDED.