685 So.2d 2 (1996)
Staria S. CARTER and William J. Carter, her husband, Appellant,
v.
UNITED OF OMAHA LIFE INSURANCE, Appellee.
No. 95-3916.
District Court of Appeal of Florida, First District.
October 15, 1996.
Rehearing Denied January 14, 1997.
*3 Neal D. Evans, Jr. of Neal D. Evans, Jr., P.A., Jacksonville, for Appellant.
Jack W. Shaw and Michael J. DeCandio of Brown, Obringer, Shaw, Beardsley & DeCandio, P.A., Jacksonville, for Appellee.
JOANOS, Judge.
Staria S. Carter and William J. Carter (appellants) appeal the grant of final summary judgment in favor of United of Omaha Life Insurance Company (the insurer) on the question of liability. Appellants contend the record contains genuinely disputed issues of material fact as to whether (1) the insurer is bound to provide continuing coverage when mistakes or omissions in an insurance application resulted from misinterpretations or erroneous advice of the insurer's agent, and (2) whether the insurer's acceptance of premiums after constructive or actual knowledge of facts sufficient to avoid liability constitutes waiver or estoppel of the misrepresentation defense. We find the record contains genuine disputed issues of material fact with respect to whether Mrs. Carter's unintentional misrepresentations or omissions were material, and reverse the grant of summary final judgment on this ground. Because our ruling will require a remand for further proceedings, we find it unnecessary to address the other arguments presented by the parties.
This cause concerns a group health insurance policy issued by the insurer to Mrs. Carter's employer. Mrs. Carter completed three applications for health insurance coverage for herself and her family on January 29, 1991; June 21, 1991; and July 15, 1991. All three applications were completed in the presence of the insurance agent. Mrs. Carter alleged that as she filled out the first application, that she told the insurance agent she had not been married to or known her husband long enough prior to her marriage to answer fully all the questions posed by the application that related to her husband's past health and habits.[1] The agent allegedly advised Mrs. Carter that she only need answer to the best of her knowledge and belief. Mrs. Carter's subsequently filed affidavit indicates that, absent the agent's assurances, she would have sought assistance from her husband in answering the questions on the application which related to his health history.
The application question and answer which resulted in this litigation state:
Have you or any named dependent ever: (a) had, (b) been advised by a physician or practitioner that you had or (c) received advice or treatment for:

*4 Disorder of kidney, bladder, prostate, or generative organs; venereal disease; alcoholism or drug use?
Mrs. Carter placed an "X" in the space provided to indicate a "No" answer to this question.
In addition to disclosure questions related to the health history of each family member, the application contains the following statements directly above the signature line for the applicant:
I represent that my above answers and statements are true and complete to the best of my knowledge and belief. THE WAIVER OF PREEXISTING CONDITIONS AND LIMITATIONS, AS OUTLINED IN THE CERTIFICATE OF INSURANCE, SHALL NOT BE EXTENDED TO ANY EMPLOYEE OR DEPENDENT FOR ANY PREEXISTING CONDITION OR RELATED CONDITION NOT DISCLOSED ON THIS APPLICATION.
The final section on the application was an authorization to physicians, hospitals, and other health care providers, employers, and group policy holders, to release information about the applicant or any family member named in the application to the insurer for its use in evaluating the group health application. The authorization includes a sentence which states: "This form will be valid for 24 months from when it is signed."
After Mrs. Carter completed the January 29, 1991, application, the insurer's investigation revealed that Mr. Carter had been hospitalized for possible heart problems. The insurer informed Mrs. Carter that her husband was not eligible for coverage at that time. On February 25, 1991, Mrs. Carter signed a form sent to her by the insurer, indicating her understanding and agreement that her husband was not eligible for coverage. In June 1991, the insurer received information that Mr. Carter's suspected cardiac problem was related to a hiatal hernia diagnosed in December 1989. Mr. Carter's history of hiatal hernia was disclosed on the January 29, 1991, application and on each subsequent application. The insurer verified the information, then added Mr. Carter to the coverage effective August 23, 1991, with an exclusion of any benefits for hiatal hernia.
After adding Mr. Carter to the coverage, the insurer received a bill for treatment of Mr. Carter for migraine headaches. At that point, the insurer conducted a further investigation of Mr. Carter's medical history. This investigation disclosed a notation on records related to Mr. Carter's hospitalization in May 1988 for thrombocytopenia. The notation indicated Mr. Carter had a history of drug abuse. The insurer also obtained records related to Mr. Carter's hospitalization in June 1988 for carbon monoxide overdose, which referenced a suspected suicide attempt.
On January 21, 1992, Mr. Carter was hospitalized and treated for a life-threatening virus. The bills related to this hospitalization and follow-up treatment totaled $40,000.00 to $50,000.00. In April 1992, the insurer advised Mrs. Carter that it would not provide medical coverage for her husband, based upon his prior nondisclosed medical history.
In June 1992, appellants filed a complaint against the insurer, based upon its failure to reimburse or compensate them pursuant to the health insurance policy issued by the company. The insurer answered, raising two affirmative defenses to the complaint. First, the insurer alleged that Mrs. Carter's applications contained material omissions and misstatements concerning Mr. Carter's prior health history, including "a nondisclosed and/or denied use of cocaine intravenous drug abuse, a history of carbon monoxide overdose, suicide attempt, and depression." Second, the insurer alleged that Mrs. Carter refused to sign an elimination rider to eliminate coverage for her husband who was uninsurable, and the insurance policy was cancelled. On June 26, 1992, the insurer notified Mrs. Carter that her certificate of insurance was cancelled effective August 23, 1991.
Thereafter, the insurer filed a motion for summary judgment with respect to the materiality of the misrepresentation made by appellants in the application for health care benefits. The motion was supported by an affidavit of the insurer's chief of underwriting *5 for the eastern region of the United States. This affidavit represents that, pursuant to the underwriting guidelines, if Mr. or Mrs. Carter had accurately disclosed Mr. Carter's prior medical history on the application, the insurer would not have issued the policy.
Appellants filed responding affidavits. In her affidavit, Mrs. Carter averred that prior to her submission of the applications for health insurance, her husband had never told her that he ever abused drugs, suffered with depression, attempted suicide, or suffered any incident involving carbon monoxide. Mrs. Carter's affidavit states in part:
4. Prior to completing the first of such applications, Affiant called to the attention of the agent of the Defendant assisting her in completing the same, a Steve Berrey, that she had not been married to or known her husband intimately long enough prior to her marriage to be able to fully answer all of the questions and inquiries posed by such application as to his past health and habits and such agent advised her, consistent with the wording on the subject application, that all she had to do was answer the same to the best of her knowledge and belief. In the absence of such assurances by the Defendant's said agent, she would have solicited the assistance of her said husband in answering the subject line of inquiry on the said applications insofar as it pertained to him, but she relied upon the representations of the said agent.
Mrs. Carter's affidavit further states that even after the insurer knew of facts which it asserted justified rescission of coverage, it continued to bill monthly and to accept premiums for coverage of Mr. Carter for more than six months.
In his affidavit, Mr. Carter averred that in 1988, he was treated for carbon monoxide exposure which occurred on a cold night when he waited in a car parked in a garage with the engine running, while his friend returned to the house to make a telephone call. When Mr. Carter complained of feeling dizzy and faint, his friend called for an ambulance. Mr. Carter denied that he ever attempted suicide. His affidavit also states that he began using cocaine in 1985 and stopped in 1988, when he voluntarily entered and completed a program called Narcotics Anonymous. Mr. Carter averred that he never told his wife about his drug use or the carbon monoxide incident, both of which occurred prior to their marriage, and he had no reason to believe she knew of such events until after the denial of medical coverage which led to the complaint filed in this case.
The trial court granted summary final judgment in favor of the insurer on the question of liability. Later, the trial court issued an order taxing costs against appellants.
When reviewing an order granting summary judgment, we must review the record as a whole, and must view all possible inferences in favor of the non-moving party. Higgs v. Florida Department of Corrections, 654 So.2d 624, 626 (Fla. 1st DCA), review denied, 659 So.2d 1086 (Fla.1995); Emergency One, Inc. v. Keffer, 652 So.2d 1233, 1235 (Fla. 1st DCA 1995). "If material issues of fact exist and the slightest doubt remains, summary judgment must be reversed." Smith v. Perry, 635 So.2d 1019, 1020 (Fla. 1st DCA 1994).
The statute applicable to the misrepresentation defense asserted by the insurer in this case is section 627.409, Florida Statutes (1991). This provision states in part:
(1) All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless:
(a) They are fraudulent;
(b) They are material either to the acceptance of the risk or to the hazard assumed by the insurer; or
(c) The insurer in good faith would either not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer *6 as required either by the application for the policy or contract or otherwise.
Since the statute does not contain a knowledge or intent element, even unintentional or unknowing misstatements may prevent recovery under a policy, if such statements alter the risk or the likelihood of coverage. Hauser v. Life General Security Insurance Company, 56 F.3d 1330, 1334 (11th Cir.1995); National Union Fire Insurance Co. of Pittsburgh, Pa. v. Sahlen, 999 F.2d 1532, 1536 (11th Cir.1993); William Penn Life Insurance Co. v. Sands, 912 F.2d 1359 (11th Cir.1990), relying upon Continental Assurance Co. v. Carroll, 485 So.2d 406, 409 (Fla.1986). A misstatement is deemed material if the facts accurately stated might reasonably have influenced the insurer in deciding whether to accept the risk. Jackson National Life Insurance Co. v. Proper, 760 F.Supp. 901, 905 (M.D.Fla.1991); Celtic Life Insurance Co. v. Fox, 544 So.2d 245, 247 (Fla. 2d DCA 1989); Minnesota Mutual Life Insurance Co. v. Candelore, 416 So.2d 1149, 1150 (Fla. 5th DCA), review denied, 424 So.2d 760 (Fla.1982). Uncontradicted deposition testimony or affidavit of an underwriter that he or she would not have offered the subject policy if the true facts had been known may satisfy the requirements of section 627.409(1)(c). National Union v. Sahlen, 999 F.2d at 1536; Jackson National Life Insurance Co. v. Proper, 760 F.Supp. at 905.
Our research has not disclosed an appellate decision construing the "knowledge and belief" language used by the insurer in the subject application for health insurance, in the specific context of section 627.409(1). However, this court has considered analogous language which incorporated a standard less stringent than the statutory standard. In Strickland Imports v. Underwriters at Lloyds, London, 668 So.2d 251, 253 (Fla. 1st DCA 1996), the court held that policy language which voids the contract only if the misrepresentations are intentional controls over the contrary provision of section 627.409. See also Travelers Insurance Cos. v. Chandler, 569 So.2d 1337 (Fla. 1st DCA 1990) (Florida law does not preclude insurer from offering broader definition of uninsured motor vehicle than provided by statute, thereby affording greater coverage).
The Eleventh Circuit Court of Appeal has held expressly that "knowledge and belief" language in a contract drafted by the insurer imposes a different standard of accuracy than that provided in section 627.409(1). The court concluded that once the insurer sets its own standard by contract for judging misrepresentations and concealment, it cannot rely on a statute that imposes more stringent requirements on an insured. Sands, 912 F.2d at 1363.
In Hauser and Sands, the court recognized that even under a less stringent standard, an insured's answers were still subject to review. The court approved the test pronounced in Skinner v. Aetna Life & Casualty, 804 F.2d 148, 149-151 (D.C.Cir.1986), for use in examining an applicant's responses to questions asked according to the applicant's "knowledge and belief." Under the Skinner standard, "[w]hat the applicant in fact believed to be true is the determining factor in judging the truth or falsity of his answer, but only so far as that belief is not clearly contradicted by the factual knowledge on which it is based." Hauser, 56 F.3d at 1335; Sands, 912 F.2d at 1365.
The insurer in this case has placed great reliance on the Sahlen opinion for the proposition that even an innocent misstatement furnishes a sufficient basis for rescission of the policy. In Sahlen, however, the court expressly stated that the parties did not structure their contract in the "best knowledge and belief" standard under review in Sands. Instead, the certification signed by the applicant provided: "the statements set forth herein are true." 999 F.2d at 1536, n. 5. In contrast, in this case, as in Hauser and Sands, the applicant signed a form certification containing the following language: "I represent that my above answers and statements are true and complete to the best of my knowledge and belief."
The "knowledge and belief" provision used by the insurer in the policy application at issue in this case establishes a less stringent standard for determination of misrepresentations, omissions, concealment of facts, and incorrect statements than the standard *7 authorized by section 627.409(1), Florida Statutes.
Since there appear to be genuine issues of material fact as to whether Mrs. Carter's answers on the policy application could be deemed material misstatements under the "best knowledge and belief" standard drafted by the insurer, we reverse the summary final judgment on the question of the insurer's liability, and remand this cause for further proceedings.
WOLF and VAN NORTWICK, JJ., concur.
NOTES
[1] The Carters had been married less than six months when Mrs. Carter completed the application.