692 So.2d 220 (1997)
Allen GREEN, as Personal Representative of the Estate of Harold Green, Individually, Appellant,
v.
LIFE & HEALTH OF AMERICA, a foreign corporation authorized to do business in the State of Florida, Appellee.
No. 96-1418.
District Court of Appeal of Florida, Fourth District.
April 9, 1997.
Rehearing Denied May 16, 1997.
Shelley H. Leinicke of Wicker, Smith, Tutan, O'Hara, McCoy, Graham & Ford, P.A., Fort Lauderdale, for appellant.
Nancy W. Gregoire of Bunnell, Woulfe, Kirschbaum, Keller & McIntyre, P.A., Fort Lauderdale, for appellee.
SHAHOOD, Judge.
In March 1991, Harold Green ("Green") applied for a home health care benefits policy with appellee, Life & Health Insurance Company of America, ("Life & Health"). The application contained a section which listed nine medical conditions and asked "Have you or your spouse within the past 5 years had or been told you have the following conditions." Next to each condition, including "kidney failure" and "chronic obstructive lung disease," Green checked the box for "no". The application also contained the following language to which Green signed his name: "The answers given by me are full, true and complete to the best of my knowledge and belief. All statements made herein are deemed representations and not warranties." Life & Health issued the policy.
One year later, Green made a claim against the policy. At that time, Life & Health reviewed Green's medical records and discovered that he suffered from chronic renal failure. As a result, Life & Health rescinded the policy and returned all of the previously paid premiums. Green filed suit against Life & Health seeking reimbursement pursuant to the insurance policy for the cost of his hospitalization and post-hospitalization care. Life & Health answered the complaint asserting that the insurance policy had been rescinded due to a material misrepresentation made in the application. Green died shortly after the initiation of the lawsuit and his personal representative, Allen Green ("appellant"), was substituted as a party.
Life & Health moved for summary judgment asserting that it had issued a home health care benefits policy to Green based on his representations in the application that he did not suffer from kidney failure or chronic *221 obstructive lung disease. In support of its motion for summary judgment, Life & Health submitted the deposition of Dr. Ross Nochimson, a doctor of internal medicine who had treated Green since approximately December 1983. Dr. Nochimson referred to Green's medical chart from 1991 wherein he had written that Green suffered from chronic obstructive pulmonary disease ("COPD"). Dr. Nochimson testified, however, that he probably told Green that he had "a little asthma" or "a little bronchitis." In addition to COPD, Green had also been diagnosed as having diabetes mellitus, gout, and chronic renal failure. With regard to the renal failure, Dr. Nochimson testified that he told Green that he had "some sluggish kidneys." The doctor stated that it is his practice to use layman's terms instead of medical terms when informing patients of their conditions.
Green's son testified by way of affidavit that he accompanied his father to his doctors' appointments and that at no time in 1991 did any doctor either state that Green had kidney failure or suggest kidney dialysis. According to his son, Green's various physicians told him only that he had slow kidneys or small kidneys.
The trial court entered summary final judgment in favor of Life & Health finding that, under section 627.409, Florida Statutes (1993), an insurance company has the right to deny coverage "based upon any misrepresentation materially affecting risk, even if such misrepresentation was made in good faith." The relevant portions of section 627.409, Florida Statutes (1993), are as follows:

Representations in applications; warranties
(1) Any statement or description made by or on behalf of an insured or annuitant in an application for an insurance policy or annuity contract, or in negotiations for a policy or contract, is a representation and is not a warranty. A misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under the contract or policy only if any of the following apply:
(a) The misrepresentation, omission, concealment, or statement is fraudulent or is material either to the acceptance of the risk or to the hazard assumed by the insurer.
(b) If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss.
The issue according to the statute, then, is not whether the applicant intentionally gives misinformation, but whether said information materially affects the risk.
In Continental Assurance Co. v. Carroll, 485 So.2d 406, 409 (Fla.1986), the supreme court considered section 627.409 and held that "[t]he plain meaning of the statute indicates that, where either an insurer would have altered the policy's terms had it known the true facts or the misstatement materially affects risk, an unintentional misstatement in an application will prevent recovery under an insurance policy." See also Morrone v. State Farm Fire and Cas. Ins. Co., 664 So.2d 972 (Fla. 4th DCA 1995)(misrepresentations in application for insurance need not be knowingly made in order to void policy.) In so holding, the court emphasized that Life Insurance Co. v. Shifflet, 201 So.2d 715 (Fla. 1967), which stands for the proposition that misrepresentations need not be knowingly made in order to void the policy, is still good law.
The supreme court's holding in Carroll compels us to affirm the trial court's grant of summary judgment in the instant case despite the undisputed evidence that Green had no knowledge of his condition and any misrepresentation was therefore unintentional. Nevertheless, we acknowledge the line of cases from the Eleventh Circuit which hold that "knowledge and belief" language in a contract drafted by the insurer imposes a different standard of accuracy than that provided in section 627.409(1). Hauser v. Life Gen. Sec. Ins. Co., 56 F.3d 1330 (11th Cir. 1995); National Union Fire Ins. Co. v. Sahlen, 999 F.2d 1532 (11th Cir.1993); William Penn Life Ins. Co. v. Sands, 912 F.2d 1359 *222 (11th Cir.1990). Under these cases, innocent misstatements or omissions do not justify the insurance company's recision of a policy where the contract requires only that the applicant answer to the best of his knowledge and belief. Contrary to the standard enunciated by the statute, the relevant inquiry under this authority is what did the applicant believe to be true, and not whether the misstatement was material to the risk. Hauser, 56 F.3d at 1335; Sands, 912 F.2d at 1365.
We note that in a situation factually similar to that in the instant case, the First District Court of Appeal recently applied Sands and its progeny in reversing the trial court's grant of summary judgment in favor of an insurance company. Carter v. United of Omaha Life Ins., 685 So.2d 2 (Fla. 1st DCA 1996)(summary judgment in favor of insurer reversed because material fact issues existed as to whether insured's answers on application were material misstatements under "knowledge and belief" standard). Therefore, while we affirm the trial court's grant of summary judgment in favor of Life & Health based upon section 627.409, Florida Statutes (1993), we certify conflict with the First District's holding in Carter.
POLEN, J., concurs.
PARIENTE, J., dissents with opinion.
PARIENTE, Judge., dissenting.
I would reverse the summary judgment. At the very least, genuine issues of material fact exist as to whether the insured's answers on the policy application were truthful, when evaluated in light of the "best knowledge and belief" qualifying language drafted by Life & Health, the insurer.
The questions in the application at issue are whether, to the best of the insured's "knowledge and belief," the insured suffered from "chronic obstructive pulmonary disease" or had "kidney failure" at the time of application. Life & Health does not dispute that the insured did not know, and had not been told by his doctors or any other source, that he suffered from these conditions. Its position, based on Continental Assurance Co. v. Carroll, 485 So.2d 406 (Fla.1986), is that "knowledge and belief" qualifying language is irrelevant when determining the existence of a misrepresentation.
I do not agree that Carroll compels affirmance. In Carroll, our supreme court, addressing a certified question, held that misrepresentations material to the acceptance of risk will invalidate an insurance policy, even if made in good faith. The only issue in Carroll was whether the presence of good faith in answering the application questions could create an exception to the bar to recovery set forth in section 627.409. See § 627.409, Fla. Stat. (1995). Our supreme court never addressed the effect of the application's "knowledge and belief" qualifying language.
In Carroll, Mrs. Carroll filled out a life insurance application on the life of the Carroll's infant son, stating that her child was "in good health and free from deformity or defect" and that the doctor's findings upon examination were that the child was "normal." 485 So.2d at 406-07. These answers were patently untrue; as uncontroverted below, the baby had developed a heart murmur and needed both an EKG and x-rays, and Mrs. Carroll had been informed of these facts by the child's doctor, who recommended additional treatment. Id. at 407. Nine days after the policy was issued, the baby died of congenital heart disease. Id. Similar to this case, the application in Carroll contained "knowledge and belief" qualifying language; however, no one could seriously contend that Mrs. Carroll was unaware of the heart murmur when she completed the application.
In William Penn Life Insurance Co. v. Sands, 912 F.2d 1359 (11th Cir.1990), the eleventh circuit addressed the same argument made here by Life & Health that the supreme court's decision in Carroll foreclosed an exception to section 627.409 based on "best knowledge and belief" provisions:
The suggestion that "knowledge and belief" language is irrelevant to the interpretation of an insurance form is not only illogical but is not supported by Carroll`s narrow holding. The Carroll court never addressed the argument raised in this case that such language can affect the interpretation of the responses provided in a policy *223 application. Additionally, in Carroll, the applicants' statements concerning the insured's health were inaccurate because they had sufficient information available for a reasonable person to know that the insured was not healthy.
Sands, 912 F.2d at 1364 n. 6.
In Sands, the insured truthfully and accurately denied "to the best of his knowledge or belief" that he had cancer or a blood disorder. Although the insured did in fact suffer from both conditions at the time of application, it was uncontroverted that he had been unaware of either condition. In vacating summary judgment in favor of the insurer, the eleventh circuit held that an insured's truthful response to a question based on his "knowledge and belief" cannot be considered a misstatement or misrepresentation in an insurance policy rescission action. Id. at 1360.
The eleventh circuit, without doing violence to either section 627.409 or the result in Carroll, reasoned that the application's qualifying language that answers were to be true to the insured's best knowledge and belief:
had the effect of shifting the focus, in a determination of the truth or falsity of an applicant's statement, from an inquiry into whether the facts asserted were true to whether, on the basis of what he knew, the applicant believed them to be true. Thus [the applicant's] answer must be assessed in the light of his actual knowledge and belief.
Id. at 1363 (citation omitted).
The eleventh circuit observed that the insurer in Sands could have retained the ability to void the contract based on any inaccuracy by avoiding "knowledge and belief" qualifying language:
Such language would reasonably induce an insurance applicant to believe that they were covered under the policy if they answered the questions to the best of their knowledge and the insurer subsequently issued the policy. To permit an insurer to rescind a policy containing "knowledge and belief" language due to an unknowing misstatement not only contravenes the terms of the contract itself, but is unfair as well. Insurance applicants faced with a policy that unambiguously stated that it could be voided for unknowing misstatements might have rejected those terms and sought another policy, or they might have undergone a full physical examination to ensure that their beliefs as to their health conformed to their representations. Conversely, had Penn Life really thought it essential to know the actual physical condition of its applicants, it could have mandated a physical examination as a condition of issuing a policy.
Id. at 1364 n. 7.
The court declined the insurer's "invitation to protect it from a risk it assumed by virtue of the contractual language it drafted." Id. at 1364. Nevertheless, the court held that the presence of a "knowledge and belief provision" would not "insulate an applicant's responses from all review." Sands, 912 F.2d at 1364. The court approved the following test to gauge responses based on an applicant's knowledge and belief:
[T]he twin qualifiers [knowledge and belief] require[] that knowledge not defy belief.... What the applicant in fact believed to be true is the determining factor in judging the truth or falsity of his answer, but only so far as that belief is not clearly contradicted by the factual knowledge on which it is based. In such event, a court may properly find a statement false as a matter of law, however sincerely it may be believed. To conclude otherwise would be to place insurance companies at the mercy of those capable of the most invincible self-deception  persons who having witnessed the Apollo landings, still believe the moon is made of cheese.
Id. at 1365 (citing Skinner v. Aetna Life & Cas., 804 F.2d 148,151 (D.C.Cir.1986)).
In Carter v. United of Omaha Life Insurance, 685 So.2d 2 (Fla. 1st DCA 1996), the first district followed Sands and its progeny, see, e.g., Hauser v. Life Gen. Sec. Ins. Co., 56 F.3d 1330 (11th Cir.1995); National Union Fire Ins. Co. v. Sahlen, 999 F.2d 1532 (11th Cir.1993), by holding that the "knowledge and belief" provision used by the insurer in the policy application "establishes a less stringent standard for determination of misrepresentations, *224 omissions, concealment of facts, and incorrect statements than the standard authorized by section 627.409(1)." Carter, 685 So.2d at 6-7.
The majority holds that the focus of section 627.409 is not on whether the applicant intentionally gives misinformation but on whether said information materially affects the risk. However, this ignores the principle that policy language chosen by the insurer controls over any contrary provision in section 627.409. See Carter, 685 So.2d at 6 (citing Strickland Imports v. Underwriters at Lloyds, London, 668 So.2d 251, 253 (Fla. 1st DCA 1996)).
The holdings of Carter and Sands are consistent with the language of section 627.409, which allows rescission by the insurer only where the insurer in good faith would not have issued the same policy had "the true facts ... been known to the insurer pursuant to a policy requirement or other requirement." § 627.409(1)(b) (emphasis supplied).
I urge our supreme court to adopt the holdings of the first district in Carter and the eleventh circuit in Sands that a "knowledge and belief" qualifier in an insurance application imposes a less stringent standard than that provided in section 627.409. In Carter, Sands, Hauser and Sahlen, summary judgment was held inappropriate where material issues of fact existed as to whether the responses were truthful based on the applicant's knowledge and belief.
In conjunction with that inquiry, the test approved in Sands is a sensible limitation: what the applicant in fact believed to be true is the determining factor unless that belief is clearly contradicted by the factual knowledge on which it is based. Sands, 912 F.2d at 1365; Carter, 685 So.2d at 6.
Under this standard, summary judgment would still have been appropriate in Carroll because the mother's statements that her child was "normal," had no health problems, and was not under treatment were clearly contradicted by what the mother had been told. The mother's refusal to acknowledge her child's illness would not have been a defense even with "best knowledge and belief" qualifying language.
Here, Life & Health chose the language in the application, including the qualifying language that answers were to be true to the best of the insured's "knowledge and belief." Instead of asking broadly-worded questions such as whether the insured had ever been treated for any condition related to the lungs, Life & Health chose to narrowly frame its questions, utilizing medical terms such as "chronic obstructive pulmonary disease." Life & Health chose not to require a physical examination and not to request the insured's records before issuing the policy.
Life & Health could have retained the statutory ability to void the contract based on any inaccuracy, but it chose instead to insert "knowledge and belief" qualifying language. A contract was formed based on that application, and Life & Health should not be able to disavow the contract after the fact.