704 So.2d 1386 (1998)
Allen GREEN, Petitioner,
v.
LIFE & HEALTH OF AMERICA, Respondent.
No. 90747.
Supreme Court of Florida.
January 22, 1998.
*1387 Jerold Hart of Jerold Hart, P.A., Hollywood, and Shelley H. Leinicke of Wicker, Smith, Tutan, O'Hara, McCoy, Graham & Ford, P.A., Fort Lauderdale, for Petitioner.
Nancy W. Gregoire and Richard T. Woulfe of Bunnell, Woulfe, Kirschbaum, Keller & McIntyre, P.A., Fort Lauderdale, and Howard D. Scher and Howard J. Bashman of Montgomery, McCracken, Walker & Rhoads, LLP, Philadelphia, PA, for Respondent.
Jeff Tomberg of Jeff Tomberg, J.D., P.A., Boynton Beach, for Amicus Curiae Academy of Florida Trial Lawyers.
Rocco N. Covino and Thomas C. Dearing of LeBoeuf, Lamb, Greene & MacRae, LLP, Jacksonville, for Amicus Curiae American Council of Life Insurance.
ANSTEAD, Justice.
We have for review the decision in Green v. Life & Health of America, 692 So.2d 220 (Fla. 4th DCA 1997). In its opinion, the district court certified conflict with the opinion in Carter v. United of Omaha Life Ins., 685 So.2d 2 (Fla. 1st DCA 1996). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. For the reasons expressed below, we quash the decision under review, approve the opinion in Carter, and hold that an insured's truthful answers on an insurance application *1388 according to the best of the insured's "knowledge and belief," are not misstatements within the meaning of section 627.409, Florida Statutes (1993), and cannot provide the grounds for the insurer's rescission of the insurance policy.

MATERIAL FACTS[1]
In March 1991, Harold Green (Green) applied for a home health care benefits policy from respondent, Life & Health of America (Life & Health). The application contained a section requesting responses to a series of questions regarding the applicant's health. The questions focused on the diagnosis, or possible diagnosis, of nine particular medical conditions. Specifically, the application asked: "Have you or your spouse within the past 5 years had or been told you have the following conditions." Next to each condition listed, including "kidney failure" and "chronic obstructive lung disease," Green checked the box for "no." Above the signature line, to which Green affixed his name, the application contained the following language:
The answers given by me are full, true and complete to the best of my knowledge and belief. All statements made herein are deemed representations and not warranties.
Life & Health issued the policy. One year later, Green made a claim against the policy. After the claim was filed, Life & Health reviewed Green's medical records and discovered that he suffered from chronic renal failure. As a result, Life & Health rescinded the policy and returned all of the previously paid premiums.
Subsequently, Green filed suit against Life & Health, seeking reimbursement for the cost of his hospitalization pursuant to the policy. Life & Health answered, asserting that the policy had been properly rescinded due to material misrepresentations made in the application. Green died shortly after the initiation of the lawsuit and his personal representative, Allen Green, was substituted as a party and is the petitioner in this case. Thereafter, Life & Health moved for summary judgment asserting that it had issued the insurance policy based on Green's representations in the application that he did not suffer from kidney failure or chronic obstructive lung disease.
The deposition of Green's treating physician was submitted as support for Life & Health's motion. In the deposition, the doctor testified that Green had suffered from chronic obstructive pulmonary disease, as noted in Green's 1991 medical chart. However, the doctor further testified that it was his regular practice to use layman's terms, instead of medical terms, when informing patients of their conditions, and that he probably told Green that he had a "little asthma" or a "little bronchitis." Additionally, instead of using a term like "chronic renal failure," the doctor would have told Green that he had "some sluggish kidneys." Green's son also gave evidence, by sworn affidavit, that during the many doctors' appointments which he attended with his father, at no time did any doctor state that Green had kidney failure or suggest kidney dialysis. The only diagnosis Green received from his various doctors was that he had "slow kidneys" or "small kidneys."
The trial court entered summary final judgment in favor of Life & Health, finding that rescission was proper under section 627.409, Florida Statutes (1993),[2] which provides that recovery under an insurance policy *1389 may be denied where there has been a material misrepresentation made in the insured's application. The Fourth District affirmed, in a two-to-one decision, based upon our decision in Continental Assurance Co. v. Carroll, 485 So.2d 406 (Fla.1986), "despite the undisputed evidence that Green had no knowledge of his condition and any misrepresentation was therefore unintentional." 692 So.2d at 221.[3] However, the Fourth District acknowledged a series of contrary holdings from the Eleventh Circuit Court of Appeals and certified conflict with the First District's opinion in Carter v. United of Omaha Life Ins., 685 So.2d 2 (Fla. 1st DCA 1996).

LAW AND ANALYSIS
In contrast to the Fourth District's holding here, the First District in Carter v. United of Omaha Life Insurance, 685 So.2d 2 (Fla. 1st DCA 1996), reached a different conclusion under similar facts, reasoning that the insurer should be held to the lower standard of accuracy created by the "knowledge and belief" language used in its own contract. The First District, citing several Eleventh Circuit decisions, concluded that "once the insurer sets its own standard by contract for judging misrepresentations and concealment, it cannot rely on a statute that imposes more stringent requirements on an insured." Id. at 6.
In Carroll, the parents of an infant boy applied for a life insurance policy on the child. 485 So.2d at 407. When the child was less than six weeks old, Mrs. Carroll was told by the pediatrician that the child had developed a heart murmur and needed both an EKG and x-rays. Id. Just one week later, the Carrolls filled out the child's life insurance application, representing that the infant was "to the best of [their] knowledge and belief, in good health and free from deformity or defect," that the doctor said his findings were "normal," and that the doctor did not prescribe any treatment or drugs. Id. Continental issued the life insurance policy approximately ten days later; and the Carrolls' baby boy died of congenital heart disease nine days thereafter. Id.
Continental denied the Carrolls' subsequent claim on the grounds that it never would have issued the life insurance policy had they answered the questions truthfully on the application. Id. Litigation then ensued, with the Carrolls prevailing in the trial court and on appeal. Id. On review, we addressed the narrow and discrete issue, certified in the form of a question of great public importance, of whether Justice Ervin's special concurrence in National Standard Life Insurance Co. v. Permenter, 204 So.2d 206 (Fla.1967), modified our strict rule enunciated in Life Insurance Co. of Virginia v. Shifflet, 201 So.2d 715 (Fla.1967), that pursuant to section 627.409's predecessor statute, "all misrepresentations material to the acceptance of risk will invalidate an insurance policy even if made in good faith." Id. at 406. In quashing the district court decision we reaffirmed our holding in Shifflet that a material misrepresentation, such as that made by the Carrolls, would justify rescission.
While the application in Carroll did contain the same "knowledge and belief" language as the application in this case, we did not consider the phrase's effect on the standard of accuracy required by the application in light of section 627.409. Instead, we applied a strict statutory interpretation analysis in finding that "[t]he plain meaning of the statute indicates that, where either an insurer would have altered the policy's terms had it known the true facts or the misstatement materially affects risk, a nonintentional misstatement in an application will prevent recovery under an insurance policy." Id. at 409. In short, our inquiry focused exclusively on the statutory scheme governing representations in applications and the Carrolls' specific misstatement, not the lesser knowledge *1390 standard provided in the parties' contract.
Judge Pariente, in her dissenting opinion below, contended that Carroll was distinguishable and its holding inapplicable to this case's factual situation. Relying on William Penn Life Ins. Co. v. Sands, 912 F.2d 1359 (11th Cir.1990), she asserted that even if an exception to section 627.409 is created, our holding in Carroll would remain intact and unchanged. In focusing on the knowledge standard issue, Judge Pariente, as did the First District in Carter, followed the reasoning of Sands to conclude that the "knowledge and belief" language creates a lower standard of accuracy than contemplated by section 627.409. Green, 692 So.2d at 223 (Pariente, J., dissenting). We agree with Judge Pariente's analysis.
In Sands, the Eleventh Circuit, applying Florida law, concluded that insurers cannot rely on a statute imposing more stringent requirements on the insured when its application employs a less rigid "knowledge and belief" standard. 912 F.2d at 1364. The Eleventh Circuit reasoned that:
The suggestion that "knowledge and belief" language is irrelevant to the interpretation of an insurance form is not only illogical but is not supported by Carroll`s narrow holding. The Carroll court never addressed the argument raised in this case that such language can affect the interpretation of the responses provided in a policy application. Additionally, in Carroll, the applicants' statements concerning the insured's health were inaccurate because they had sufficient information available for a reasonable person to know that the insured was not healthy.
912 F.2d at 1364 n. 6. The insureds in Sands, like the insured here, each truthfully and accurately denied "to the best of his knowledge or belief" that he had, among other things, cancer or a blood disorder, although each insured subsequently tested positive for these conditions.[4]
After careful consideration, we agree with Judge Pariente's analysis and conclude that Carroll does not control the case before us. We find dispositive the combination of the parties' stipulation that Mr. Green had no knowledge of his true medical condition and the lesser "knowledge and belief" standard inserted in the contract by its drafter, Life & Health. Once made, both the stipulation and the contractual language bound Life & Health. Therefore, unlike the factual situation in Carroll, this confluence of factors foreclosed Life & Health's resort to the strict statutory language in section 627.409. Accord LeMaster v. USAA Life Ins. Co., 922 F.Supp. 581, 586-87 (M.D.Fla.1996) (finding insured, to the best of his knowledge and belief, did not know he had metastatic malignant melanoma when making insurance application, consequently, his answers "were neither the intentional nor `nonintentional misstatements' which will prevent recovery under an insurance policy since they were not misstatements") (citation to Carroll omitted) (emphasis added). As did the court in Sands, we conclude that under the "knowledge and belief" standard set out in the insurance application, the deceased insured here has not been shown to have incorrectly answered the question posed as contemplated by section 627.409. Indeed, the insured has not been shown to have intentionally or innocently misrepresented any facts within his knowledge and belief. In short, section 627.409 was never implicated under these facts, and therefore summary judgment should not have been entered by the trial court.
It is well settled that, as a general rule, "parties are free to `contract-out' or `contract around' state or federal law with regard to an insurance contract, so long as there is nothing void as to public policy or statutory law about such a contract." King v. Allstate Ins. Co., 906 F.2d 1537, 1540 (11th Cir.1990); see also Foster v. Jones, 349 So.2d 795, 799-800 (Fla. 2d DCA 1977)(same); Baxter v. Royal Indemnity Co., 285 So.2d 652, 655 (Fla. 1st DCA 1973) (same); Trak Microwave Corp. v. Medaris Management, Inc., 236 So.2d 189, 193 (Fla. 4th DCA 1970) *1391 (same) (citing Richardson v. Holman, 160 Fla. 65, 33 So.2d 641 (1948)). Further,
[i]t is axiomatic that parties are free to create the insurance contract they deem appropriate to their needs, provided its form and content do not conflict with any provision of law or public policy; and such is the case even though the resulting contract is improvident as to the insured.
Assuming compliance with a standard form and the absence of conflict with statute, the parties to a contract of insurance are free to incorporate such provisions and conditions as they desire.
1 Lee R. Russ, Couch on Insurance 3d, § 17:2 (1997). Therefore, within reason, parties are free to contract even though either side may get what turns out to be a "bad bargain." Quinerly v. Dundee Corp., 159 Fla. 219, 222, 31 So.2d 533, 534 (1947) ("[C]ourts are powerless to rewrite contracts or interfere with the freedom of contracts or substitute [their] judgment for that of parties to the contract in order to relieve one of the parties from apparent hardships of an improvident bargain."). We have long held that under contract law principles, contract language that is unambiguous on its face must be given its plain meaning. Hurt v. Leatherby Ins. Co., 380 So.2d 432, 433 (Fla. 1980); Arnold v. First Savings & Trust Co., 104 Fla. 545, 141 So. 608 (1932); People's Savings Bank & Trust Co. v. Landstreet, 80 Fla. 853, 87 So. 227 (1920); Atlanta & St. Andrews Bay Ry. v. Thomas, 60 Fla. 412, 53 So. 510 (1910); see also Acceleration Nat'l Serv. Corp. v. Brickell Fin. Servs. Motor Club, Inc., 541 So.2d 738 (Fla. 3d DCA 1989); Carefree Villages, Inc. v. Keating Properties, Inc., 489 So.2d 99 (Fla. 2d DCA 1986); Boat Town U.S.A., Inc. v. Mercury Marine Div. of Brunswick Corp., 364 So.2d 15 (Fla. 4th DCA 1978); United States ex rel. Small Business Admin. v. South Atlantic Prod. Credit Ass'n, 606 So.2d 691 (Fla. 1st DCA 1992).
In applying those established principles to this case, we cannot ignore the fact that Life & Health chose to draft and incorporate a different "knowledge and belief" standard in its application, thereby bypassing the rigid statutory standard, and Life & Health stipulated that Mr. Green did not know the medical diagnosis for his problems. In the final analysis, this contract, by its own terms, established a lesser knowledge standard than that required by section 627.409. The parties agreed to that lesser standard, a knowledge requirement inserted by the drafter of the agreement, Life & Health.
In essence, Life & Health now seeks to repudiate its own contract and, as a fall back position, claim refuge in the stricter statutory standard. This appears to be a "wait and see" approach to insurance contract interpretation, a method that disadvantages a good faith insured. In this regard, we agree with the commentary of the Eleventh Circuit in Sands:
Had Penn Life intended to retain the ability to void the contract based on any inaccuracy, it should not have used the "knowledge and belief" qualifying language. Such language would reasonably induce an insurance applicant to believe that they were covered under the policy if they answered the questions to the best of their knowledge and the insurer subsequently issued the policy. To permit an insurer to rescind a policy containing "knowledge and belief" language due to an unknowing misstatement not only contravenes the terms of the contract itself, but is unfair as well. Insurance applicants faced with a policy that unambiguously stated that it could be voided for unknowing misstatements might have rejected those terms and sought another policy, or they might have undergone a full physical examination to ensure that their beliefs as to their health conformed to their representations. Conversely, had Penn Life really thought it essential to know the actual physical condition of its applicants, it could have mandated a physical examination as a condition of issuing a policy.
912 F.2d at 1364 n. 7. Here, the contract's language unambiguously held the applicant to the requirement that he give answers that "are full, true and complete to the best of my knowledge and belief." Green, 692 So.2d at 220. Since Life & Health acknowledges that is precisely what Mr. Green did in truthfully answering the application's questions, the knowledge standard employed in the contract *1392 precludes the summary judgment entered by the trial court.

CONCLUSION
In summary, we hold that an insured's truthful answers on an insurance application according to the best of the insured's "knowledge and belief," do not constitute misstatements within the meaning of section 627.409, Florida Statutes (1993), and therefore cannot provide the grounds for the insurer's rescission of the insurance policy. Accordingly, we quash Green, approve Carter, and remand this cause for further proceedings consistent herewith.
It is so ordered.
KOGAN, C.J., OVERTON, SHAW, HARDING and WELLS, JJ., and GRIMES, Senior Justice, concur.
NOTES
[1] The following facts are taken from the district court's opinion. Green, 692 So.2d at 220-21.
[2] The statute provides, in pertinent part, that:

(1) Any statement or description made by or on behalf of an insured or annuitant in an application for an insurance policy or annuity contract, or in negotiations for a policy or contract, is a representation and is not a warranty. A misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under the contract or policy only if any of the following apply:
(a) The misrepresentation, omission, concealment, or statement is fraudulent or is material either to the acceptance of the risk or to the hazard assumed by the insurer.
(b) If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss.
[3] Indeed, as repeatedly acknowledged at oral argument by Life & Health and as evidenced in the record, the parties stipulated that although Harold Green had chronic obstructive pulmonary disease, there was "no evidence ... that he knew the medical diagnosis for the problems he suffered from." The parties stipulated to these facts on the record, at the beginning of the hearing on Life & Health's summary judgment motion before Judge Robert Andrews on February 6, 1996.
[4] Both of the insureds, Anthony Pellegrino and Richard Taylor, were subsequently diagnosed as having AIDS and cancer of the lymph nodes. Id. at 1361.