Russell B. SIMMONS, Sr.,
et al., Plaintiffs,

v.

CONSECO LIFE INSURANCE
COMPANY, etc.,
Defendant.

No. 8:99–CIV–2902T17MAP.

United States District Court,
M.D. Florida,
Tampa Division.

April 23, 2001.

**1216**

Nicholas M. Matassini, Matassini Law Firm, P.A., Tampa, Fl, for Plaintiff.

Timon V. Sullivan, Wm. Jere Tolton, III, Ogden & Sullivan, P.A., Tampa, FL, for Defendant.

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

The cause is before the Court on defendant's motion for summary judgment (Docket No. 14) (also referred to as MSJ); affidavit of Ferry Bunting in support of MSJ (Docket No. 15); records in support of MSJ (Docket No. 16); response to MSJ (Docket No. 17); plaintiff's objections to records filed at Docket No. 16 (Docket No. 18); and agreed motion to clarify statement of facts in reference to dispositive motion for summary judgment (Docket No. 19).

### STANDARD OF REVIEW

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine

issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant*, 595 F.2d 994, 996–97 (5th Cir.1979), (quoting *Gross v. Southern Railroad Co.*, 414 F.2d 292 (5th Cir.1969)). Factual disputes preclude summary judgment.

The Supreme Court of the United States held, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, (1986):

> In our view the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 273.

The Court also said, "Rule 56(e) therefore requires that nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" *Celotex Corp.*, at 274. As the district court in *Coghlan v. H.J. Heinz Co.*, 851 F.Supp. 808 (N.D.Tex. 1994), (internal citations omitted), summarized:

> Although a court must "review the facts drawing all inferences most favorable to the party opposing the motion," ...the nonmovant may not rest on mere allegations or denials in its pleadings; in short, "the adverse party's response... must set forth specific facts showing that there is a genuine issue for trial ." FED.R.CIV.P. 56(e). However, merely colorable evidence or evidence not significantly probative will not defeat a properly supported summary judgment...The existence of a mere scintilla of evidence will not suffice....

The Court must "draw inferences from the evidence in the light most favorable to the nonmovant and resolve all *reasonable* doubts in that party's favor." *Specialty Malls of Tampa v. City of Tampa*, 916 F.Supp. 1222 (M.D.Fla.1996) (emphasis added). A court is not required to allow a case to go to trial "when the inferences that are drawn from the evidence, and upon which the non-movant relies are 'implausible.'" *Mize v. Jefferson City Board of Education*, 93 F.3d 739, 743 (11th Cir. 1996).

### COMPLAINT

The complaint in this cause was filed in the Circuit Court for the Thirteenth Judicial Circuit of the State of Florida, in and for Hillsborough County, and later removed to this Court. The complaint states the following as the basis for the requested relief:

1. [On] or about June 4, 1997, there existed a contract or policy for the payment of life insurance, # 22300134179, running between EDWARD WALKER, JR. and the Defendant, CONSECO LIFE INSURANCE COMPANY, formerly PHILADELPHIA, wherein the Defendant, CONSECO LIFE INSURANCE COMPANY, formerly PHILADELPHIA, contracted to afford the chosen beneficiaries of EDWARD WALKER, JR., namely the Plaintiffs, RUSSELL B. SIMMONS, SR. and RUSSELL B. SIMMONS, a/k/a RUSSELL B. SIMMONS, JR., death benefits in the total sum of Seventy-five Thousand and NO/Dollars ($75,000.00). The Plaintiffs, RUSSELL B. SIMMONS, SR. and RUSSELL B. SIMMONS, a/k/a RUSSELL B. SIMMONS, JR., are not in possession of the said insurance contact (sic) or policy for life insurance but its contents are well known to the Defendant, CONSECO LIFE INSURANCE COMPANY, formerly PHILADELPHIA. The contract or policy for life insurance was in full

force and effect at the time of the events herein sued upon, and all conditions precedent have been complied with.

2. [On] or about February 7, 1999 EDWARD WALKER, JR., died.

3. [On] March 1, 1999 the Plaintiffs, RUSSELL B. SIMMONS, SR. and RUSSELL B. SIMMONS, a/k/a RUSSELL B. SIMMONS, JR., filed a claim and made demand for payment of death benefits in the total sum of Seventy-five Thousand and NO/Dollars ($75,000.00), as the beneficiaries named in the aforesaid contract or policy of life insurance.

4. [On] or about April 23, 1999, a representative of the Defendant, CONSECO LIFE INSURANCE COMPANY, formerly PHILADELPHIA, wrote the Plaintiffs and advised that because EDWARD WALKER, JR.'s denial that he was convicted of possession of cocaine and marijuana and marijuana distribution on November 15, 1995 and was further convicted of possession of cocaine, marijuana and narcotic equipment on February 15, 1996, was not disclosed on the application for policy number 22300134179, such nondisclosure was considered to be a material misrepresentation on the application, and consequently the claim would be denied and the policy rescinded ...

5. [Thereafter] a copy of the underwriting guidelines was requested from and provided by the Defendant, CONSECO LIFE INSURANCE COMPANY, formerly PHILADELPHIA, ... which do address a conviction of narcotics trafficking as a reason to deny coverage but do not indicate someone would be declined for simple possession or delivery of a controlled substance. In Florida, trafficking, which EDWARD WALKER, JR. was never convicted of, is a separate crime from possession or delivery of a controlled substance and involves large quantities. Further, the fact that someone possessed or delivered controlled substances doe (sic) not mean by that fact alone that they used those controlled substances on a daily or weekly basis. As such, no material misrepresentation of facts occurred nor is there a basis for the Defendant, CONSECO LIFE INSURANCE COMPANY, formerly PHILADELPHIA, to deny that the contract or policy of insurance exists.

### UNDISPUTED FACTS

The parties submitted to the Court, in conjunction with the motion for summary judgment, the following undisputed facts to be considered by the Court in determining the pending motion (Docket No. 19):

1. On December 27, 1995, Edward Walker, Jr., the owner of the life insurance policy issued by Defendant ... entered a plea of no contest to (1) Delivery of Cannabis (a third degree felony); (2) Possession of Cannabis (a first degree misdemeanor); and (3) Possession of Cocaine (a third degree felony), and although [Mr. Walker] was adjudicated guilty of those crimes, adjudication was withheld on the third degree felony counts.

2. On March 26, 1996, following a violation of the terms of probation, Walker's probation was revoked, he was adjudicated guilty of the two original underlying felonies (Delivery of Cannabis and Possession of Cocaine), and was thereafter committed to the custody of the Sheriff of Hillsborough County and sentenced to concurrent prison terms of 364 days on each of the two felony offenses. Thus, Walker was not "sentenced to a period of probation" following his revocation hearing as appears in Plaintiffs' reply. Plaintiffs agree that Walker served time following two felony convic-

tions in March 1996, and that their Reply should be corrected accordingly.

3. It is therefore undisputed that on March 26, 1996, Walker was convicted of two felonies and sentenced to two concurrent jail terms of 364 days on each count, before he submitted the application for life insurance on May 30, 1997.

### OBJECTIONS TO EXHIBIT

The first question before the Court is whether or not the records filed in support of the motion for summary judgment (Docket No. 16) may be considered by the Court in resolving the motion. The plaintiffs have filed an objection to the records which contends that the records have never been produced to the plaintiffs and, further, that the records are not authenticated, sworn or certified. The defendant never responded to the objection.

█ The Court notes that the appellate court of this circuit has found that Rule 56, Fed.R.Civ.P., does not restrict a court to consideration of only authenticated documents. A court can consider unauthenticated documents if they are unchallenged, and, even if challenged, it may be appropriate, at the summary judgment stage, to rely on unauthenticated records "where it finds that those records could be reduced to admissible evidence at trial." *Mims v. Old Line Life Ins. Co. of America*, 46 F.Supp.2d 1251 (M.D.Fla.1999). Pursuant to this discussion, this Court could, under favorable conditions, consider the records here objected to by the plaintiffs. However, the Court does not find the records objected to necessary for the purpose of resolving the pending motion. The Court notes that even if the Court considered these records, the records would only bolster the decision set forth below.

### MOTION FOR SUMMARY JUDGMENT

The record, including exhibits to the motion for summary judgment, has been reviewed and the Court finds that the following "facts" are considered undisputed for purposes of reviewing the motion. These statements are in addition to the undisputed facts which the parties set forth and which are set out in a previous section of this order:

1. On May 30, 1997, Edward Walker, Jr., filed an application for life insurance with Philadelphia Life Insurance Company (Philadelphia Life), the former company name for Conseco Life Insurance Company (Conseco) (Docket No. 15 & Ex. A to MSJ). Question 15 of the application asked the questions: Has any person proposed for insurance on this application: (g) in the past 10 years used on a daily or weekly basis; heroin, morphine, other narcotics, marijuana, cocaine, barbiturates, amphetamines, or hallucinogenic drugs; or alcohol? and (i) within the past 10 years been convicted of a felony? Mr. Walker answered no to both questions (Docket No. 15 & Ex. A to MSJ). Mr. Walker signed the form attesting that:

> I represent...that the statements made on this application are true, complete and correctly recorded to the best of my knowledge and belief. I agree that the Company can rely on these statements. I agree that this application...will be the basis for any policy issued on this application (Ex. A to MSJ)

2. The insurance agent who sold the policy to Mr. Walker was the plaintiff Russell B. Simmons, Sr., who, with his co-plaintiff and son, is a beneficiary of the insurance policy (Ex. A to MSJ). Russell B. Simmons, Sr., asserts that he learned of Mr. Walker's felony convictions in October or November of 1998, but he never notified the insurance company of that information. Further, Mr. Simmons, Sr., did admit that

if the defendant had known of the felony convictions that they might have at least raised the premium on the policy (Ex. P to MSJ).

3. As part of the application process, Russell B. Simmons, Sr., as the licensed insurance agent, and Mr. Walker, as the proposed policy owner, signed an Addendum to Application which reads:

Florida law requires that you be given this notice:

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony of the third degree (Ex. A to MSJ).

4. The defendant asserts that "receipt and analysis of the application for a life insurance policy provides the basis for [it] to determine the nature of the risk being assumed and to determine the amount of the premium that will be charged to properly underwrite the risk being assumed.... If any of the information provided by the application is misrepresented or provided in a fraudulent manner [it] cannot realistically assess the nature of the risk being assumed, cannot properly assess the premium rates to be charged and cannot properly assess the amount of the policy benefits." (Docket No. 15). The defendant had underwriting guidelines in place at the time the policy was issued. In regard to "Illegal and Criminal Activities", the guidelines stated the following, in relevant part, and then listed some crimes and the position the company took in regard to those crimes and the underwriting:

We are most often limited by the availability of information when attempting to classify those with histories of illegal or criminal activities. With this lack of knowledge it is difficult to predict future behavior, and even if the information were extensive, it would still be doubtful that the underwriter could effectively predict the future conduct and course of a given individual. This is further complicated by lack of meaningful statistics and the problems of antiselection by an applicant. For these reasons reliance for the evaluation of these risks must involve individual consideration to a high degree even though in some instances, a suggested rating may be indicated....

There are many standpoints from which criminal records can be analyzed, but for the purpose of underwriting probably the most satisfactory points of departure would be: the duration of involvement in crime; prior experience with government agencies (police, courts and correctional institutions); and the types of offense committed.

In no event would consideration be given those with patterns of recidivism or who are multiple or persistent offenders with extensive criminality...those with histories of problem drinking or alcoholism or the misuse of other drugs...

It must be emphasized that the Underwriting Evaluations which follow are suggested only for the best cases and that the *final decision in each instance must rest on the good judgment of the underwriter based on insurable interest, insurance need, all the aspects of the individual case and the absence of evidence indicative of continuing illegal or criminal activity.* (Ex. L to MSJ) (emphasis added).

5. Based on the application as submitted by the plaintiff, a life insurance policy was issued on June 4, 1997, and the policy number assigned was 2300134179. The policy was for a death benefit in the amount of $75,000.00, and the named beneficiaries were Russell B. Simmons, Sr., and Russell B. Simmons, Jr. (Ex. B to MSJ).

6. Mr. Walker expired at the Lake Butler Correctional Facility on February 7, 1999, (Ex. C to MSJ) and the plaintiffs filed a claim for benefits on March 1, 1999.

7. After receiving the death certificate of Mr. Walker with the claim for benefits, the defendant caused an investigation to be had on the plaintiffs' claim and discovered the following information:

On December 27, 1995, Mr. Walker was charged, entered pleas of nolo contendere, and was adjudicated guilty of one count of delivery of cannabis, a third degree felony; one count of cannabis possession, a misdemeanor; and one count of cocaine possession, a third degree felony, with adjudication withheld and a sentence of 18 months probation (Ex. D to MSJ).

On March 26, 1996, Mr. Walker again entered pleas of nolo contendere and was adjudicated guilty of one count of delivery of cannabis, a third degree felony and one count of cocaine possession, a third degree felony, and was sentenced to 364 days on each count to run concurrently and was remanded to the custody of the Hillsborough County Sheriff (Ex. E to MSJ)

On January 8, 1997, Mr. Walker was charged with cocaine possession and possession of narcotic equipment, both third degree felonies, and apparently the charges, at least as to possession of cocaine, was [sic] dismissed. It appears, further, that Mr. Walker had probation revoked and was sent to jail again on December 25, 1998, about six weeks prior to his death on February 7, 1999 (Ex. F to MSJ).

8. The information set forth above was sent to defendant's underwriting department and they were asked to review the relevant information, "Insured convicted of felony prior to app", and "advise if the decision to approve would have been al-tered had this information been revealed at the time of application." The response, which came within one day of submission to underwriting, was that the application would have been declined. (Ex. G to MSJ and Docket No. 15).

9. Thereafter, on April 23, 1999, the defendant notified the plaintiffs that the "statements and answers given on the application are material and the company relies on the statements and answers as being complete and true in determining whether an applicant is qualified for insurance." The defendant, indicating that it would not have issued the policy but for the misrepresentations, returned to each beneficiary $840.00, half of the amount of premiums paid into the company (Ex. I to MSJ).

## DISCUSSION

The defendant asserts that the policy should be rescinded, based on misrepresentation, if it establishes either that: 1) the misrepresentation was material to the acceptance of the risk or the hazard assumed, or 2) if the true facts had been known pursuant to a policy or other requirement that the insurer, in good faith, would not have issued the policy, would not have issued it at the same premium rate, would not have issued it in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss. Further, the defendant asserts that it need not prove that the misrepresentation was intentional or knowing, only that it was material.

On the other hand, the plaintiffs assert that the defendant has been unable "to establish by direct evidence any fraudulent misrepresentation....It is reasonable to assert that Walker did not know he had been convicted when his probation was revoked in 1996....Walker could have

easily been under the mistaken impression that he still had not been convicted in 1996...." Further, plaintiffs alleged that the defendant "cannot establish as a matter of law that Walker's unintentional misrepresentation was material to the acceptance of the risk or to the hazard assumed by the insurer, or that if the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have would not have issued the policy or contract, would not have at the same premium rate, would not have issued a policy, (sic) or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss." The plaintiffs claim that the underwriting guidelines (Ex. L to MSJ) and "self-serving" affidavit of defendant's employee must be submitted to a jury because their interpretation and weight are material factual matters which must be presented to the fact-finder.

■■■ The law of Florida applies to this case, as the state where the policy was issued. Under Florida law, ambiguities in insurance contracts must be resolved in favor of the insured. *LaTorre v. Connecticut Mutual Life Ins. Co.*, 38 F.3d 538, at 538, 540 (11th Cir.1994). Florida Statutes, in relevant part, state:

> A misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under the contract or policy only if any of the following apply:
>
> (a) The misrepresentation, omission, concealment, or statement is fraudulent or is material either to the acceptance of the risk or to the hazard assumed by the insurer.
>
> (b) If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would

not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss. § 627.409(1), Fla. Stat.

Pursuant to the Florida statute, the defendant is not required to prove that any misrepresentation was made intentionally or knowingly; however, by modification to the policy an insurance company may alter the standard provided by the statute. Where an insurance company chooses to draft and incorporate a "knowledge and belief" in the form application, "thereby bypassing the rigid statutory standard" it may not repudiate its own contract and try to return to the stricter statutory standard. *Green v. Life & Health of America*, 704 So.2d 1386 (Fla.1998).

The Supreme Court of Florida in *Green*, 704 So.2d at 1389, 1390, examined a case concerning similar issues to this case. The court stated:

> As did the court in *Sands*, 912 F.2d 1359, we conclude that under the "knowledge and belief" standard set out in the insurance application, the deceased insured here has not been shown to have incorrectly answered the question posed as contemplated by section 627.409. Indeed, the insured has not been shown to have intentionally or innocently misrepresented any facts within his knowledge or belief...therefore summary judgment should not have been entered by the trial court....
>
> ...[W]e cannot ignore the fact that Life & Health chose to draft and incorporate a different "knowledge and belief" standard in its application, thereby bypassing the rigid statutory standard....In the final analysis, this contract, by its own terms, established a lesser knowledge standard than that required by section 627.409.

■ The insured in this case also signed an application form that incorporated a different "knowledge and belief" standard. The application language is as follows:

> I represent...that the statements made on this application are true, complete and correctly recorded to the best of my knowledge and belief. I agree that the Company can rely on these statements. I agree that this application...will be the basis for any policy issued on this application (Ex. A to MSJ).

The defendant has bypassed the rigid statutory standard and established a lesser knowledge standard than the statute requires, as did the insurance companies in the *Green* and *Sands* cases. Therefore, the defendant must establish, in accordance with these cases, that the insured's misrepresentations were intentional. The defendant is unable to do so in this case. However, the defendant may have another route to travel in support of its summary judgment motion.

In *William Penn Life Ins. Co. of New York v. Sands*, 912 F.2d 1359 (11th Cir. 1990), the applicants for life insurance signed applications that stated that their answers were made "to the best of my knowledge and belief" and that the "statements and answers are true to the best of my knowledge and belief." It later turned out that, unbeknownst to the applicants, they suffered from cancer and were infected with HIV at the time of the applications. The insurance company repudiated the policies and refused to pay death benefits when one of the applicants died. The district court granted summary judgment for the insurance company based on § 627.409(1), Fla. Stat.

On appeal, the Eleventh Circuit Court of Appeals vacated the entry of summary judgment and remanded the case to the district court. The Court held that the "contract could not be rescinded absent proof of an intentional misstatement because 'once [the insurer] has set its own standard by contract for judging misrepresentations and concealment, it cannot rely on a statute that imposes more stringent requirements on an insured.'...The 'knowledge and belief' language used by Penn Life in its application forms imposed a different requirement of accuracy than that provided in section 627.409." The court also adopted the test of *Skinner v. Aetna Life & Casualty*, 804 F.2d 148, 151 (D.C.Cir.1986), for examining responses to questions asked according to the knowledge and belief of the applicant:

> [T]he twin qualifiers [knowledge and belief] require[ ] that knowledge not defy belief...What the applicant in fact believed to be true is the determining factor in judging the truth or falsity of his answer, but *only* so far as that belief is not clearly contradicted by the factual knowledge on which it is based. In such event, a court may properly find a statement false as a matter of law, however sincerely it may be believed. To conclude otherwise would be to place insurance companies at the mercy of those capable of the most invincible self-deception—persons who having witnessed the Apollo landings, still believe the moon is made of cheese.

*Sands* 912 F.2d at 1365; *see also, Hauser v. Life General Security Ins. Co.*, 56 F.3d 1330 (11th Cir.1995).

In *Mims v. Old Line Life Ins. Co. of America*, 46 F.Supp.2d 1251 (M.D.Fla. 1999), the facts were similar, though not identical, to the facts of this case. The deceased insured had signed an application with an amended "knowledge and belief" standard. After her death, the insurance company rescinded the policy based on what they claimed to be material misrepresentations related to her "address, income, net worth, employment, driving and driv-

er's license history, occupation, past medical history, medical treatment, rejection of insurance, and foreign travel plans." The court, in granting summary judgment for the insurance company, found that:

> [A]n applicant's belief is to be credited only to the extent that it is not "clearly contradicted by the factual knowledge on which it is based." (citations omitted) Thus, even if Bennett were alive and able to testify regarding her beliefs as to the veracity of information she gave the medical examiner, if the underlying facts known to her were in clear contradiction of her testimony, her stated beliefs would not be credited and she would be deemed to "know" of the misrepresentations. Defendant's burden on summary judgment is to demonstrate as a matter of law that there were underlying facts known to Bennett which "clearly contradicted" her answers to the medical examiner ...

> Additionally, defendant must prove the materiality of such misrepresentations. A misrepresentation is material if it affects the risk undertaken by the insurer ... *The misrepresentation need not be one that would have caused the insurer to decline to issue the policy but must only be such that a truthful statement would put a careful insurer on notice that further inquiry is warranted to adequately gauge the risk of issuing a policy* ... The materiality of a misrepresentation may be shown as a matter of law because some misrepresentations are "so gross that any one would know they are material." *Id* at 1256 (emphasis added).

Further, the court found that an insurance company may be able to establish material misrepresentation through the affidavits of an underwriter, where, as in that case, the plaintiff failed to offer contradictory evidence to rebut the statements of the underwriter that the misrepresentation would have cause the policy to be declined. *Id.*

The plaintiffs attack the affidavit of the defendant's underwriter as "self-serving" but fails to submit any evidence, i.e. depositions or affidavits of other underwriters, to contradict the affidavit of Ferry Bunting (Docket No. 15). The plaintiffs provide only "mere allegations or denials" which do not overcome the showing made by the defendant. *Gasaway v. Northwestern Mutual Life Ins. Co.*, 26 F.3d 957, 960 (9th Cir.1994); *Carter v. United of Omaha Life Ins.*, 685 So.2d 2, 6 (1st DCA Fla. 1996).

■ The defendant insurance company in the instant case has demonstrated that Edward Walker, Jr., misrepresented his criminal history on the application for life insurance. Walker denied having been convicted of any felonies within the previous ten (10) years. In fact, he had been convicted of two (2) felonies just a little more than a year prior to applying for the life insurance. At that time, Walker had been sentenced to 364 days of incarceration and had served jail time on those convictions (Docket Nos. 15 and 19, Exs. E and F to MSJ). Under § 627.409(1), Fla. Stat., that would have been sufficient to rescind the insurance policy. Since the defendant chose to go outside of the statute and alter the standard, the question facing this Court is whether, as a matter of law, the defendant demonstrates that there were underlying facts known to Walker which "clearly contradicted" his statements on the application for insurance, and, if those misrepresentations were material.

■ Clearly, the defendant has established the materiality of the misrepresentations. The company did not need to prove that they would have denied coverage, although that is their uncontroverted

evidence from their underwriter; they need only prove that the misrepresentations would have put them on notice that further inquiry was warranted to adequately gauge the risk of issuing a policy. Even the plaintiffs, in the testimony of Russell B. Simmons, Sr., admitted that, at the least, accurate information would have caused the insurer to raise the premiums on the policy (Ex. P to MSJ).

The Court, upon review of the assertions of both parties, has concluded that summary judgment should be granted in this case. It is clear that the misrepresentations of Mr. Walker were material to the decision to issue the life insurance policy. If the defendant insurer had been given the accurate information "the insurer in good faith would not have issued the policy or contract, would not have issued it at the same premium rate, [or] would not have issued a policy or contract in as large an amount."

The Court is also convinced that the position of the plaintiffs, that it is reasonable to assert that Mr. Walker did not know he had been convicted of any felonies at the time he applied for the insurance, is not fatal to the motion. The Court finds that defendant's burden on summary judgment, to demonstrate as a matter of law that there were underlying facts known to Walker which "clearly contradicted" his answers on the application, has been met. The Court finds that Mr. Walker's statements on the insurance application were false as a matter of law. "To conclude otherwise would be to place [this] insurance compan[y] at the mercy of [someone] capable of the most invincible self-deception—persons who having witnessed the Apollo landings, still believe the moon is made of cheese." *Skinner v. Aetna Life & Casualty*, 804 F.2d 148, 151. Accordingly, it is

**ORDERED** that the defendant's motion for summary judgment (Docket No. 14) be granted and the Clerk of Court is **directed to enter judgment for the defendant in this case.**